**John Robert FISCHER, Appellant**

v.

**The STATE of Texas.**

**No. PD–0043–07.**

Court of Criminal Appeals of Texas.

Jan. 16, 2008.

Windi Akins, Winston E. Cochran Jr., Houston, for appellant.

Eric Kugler, Asst. D.A., Houston, Jeffrey Van Horn, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, and HOLCOMB, JJ., joined.

This case presents a novel question in Texas evidentiary law: Are a law enforcement officer's factual observations of a DWI suspect, contemporaneously dictated on his patrol-car videotape, admissible as a present sense impression exception to the hearsay rule under TEX.R. EVID. 803(1)?[1] They are not. An officer may testify in the courtroom to what he saw, did, heard, smelled, and felt at the scene, but he cannot substitute or augment his in-court testimony with an out-of-court oral narrative. This calculated narrative in an adversarial setting was a "speaking offense report." It was not the type of unreflective, street-corner statement that the present sense impression exception to the hearsay rule is designed to allow. We therefore agree with the Fourteenth Court of Appeals, which had held the same.[2]

### I.

At about 1:40 a.m. on May 29, 2004, DPS Trooper Martinez turned on his dashboard-mounted video camera and announced, on tape, that he was pulling over a driver who wasn't wearing a seatbelt. After the driver, appellant, parked his truck in his apartment complex parking

---

**1.** We granted the State's two grounds for review:

    (1) The court of appeals erred in holding that the hearsay exception dealing with police offense reports trumped the hearsay exception dealing with present sense impressions.

    (2) The court of appeals erred in holding that the audio portion of the DWI traffic stop

videotape did not constitute present sense impressions.

**2.** *Fischer v. State,* 207 S.W.3d 846, 848 (Tex. App.-Houston [14th Dist.] 2006) ("We hold that a law enforcement officer may not avoid the restrictions on the evidentiary use of an offense report by simply dictating the substance of that report.").

lot, Trooper Martinez approached appellant and began questioning him. All of that questioning was recorded through Trooper Martinez's body microphone and captured on camera.

Trooper Martinez asked for appellant's driver's license and insurance; appellant responded that he had just moved. The trooper then asked appellant whether he had "any alcohol in the car," and quickly added, "I smell alcohol." Trooper Martinez then asked appellant, "How much alcohol have you had this evening?" And appellant replied, "Three wines." Trooper Martinez told appellant to stay where he was, and the trooper walked back to his patrol car and dictated into his microphone that appellant had "glassy, bloodshot eyes" and "slurred speech." The trooper stated that he had smelled "the strong odor of alcoholic beverage."

Trooper Martinez then walked back to appellant and asked him if there was any reason why he was not wearing a seatbelt. Appellant said that he was "depressed" over his recent divorce. Trooper Martinez asked appellant if he had any weapons or drugs. Appellant said "No," but Trooper Martinez opened the driver's door of appellant's truck and got inside to make a cursory search. Finding nothing, the trooper got back out and told appellant, "I'm going to conduct a small exam of your eyes." He directed appellant to stand outside the range of the video camera and administered a horizontal gaze nystagmus (HGN) test.

After the HGN test was completed, Trooper Martinez again left appellant and returned to his patrol car and recorded the following observations:

> Subject has equal pupil size, equal tracking, has a lack of smooth pursuit in both eyes, and has distinct nystagmus at maximum deviation in both eyes. Subject also has onset of nystagmus prior to forty-five degrees in both eyes.

Trooper Martinez also dictated into his microphone: (1) he stated that he had seen a "wine opener" in appellant's truck; (2) he repeated that there was a strong odor of alcohol on appellant's breath; and (3) he again noted that appellant had glassy, bloodshot eyes and "slurred speech."

The trooper then told appellant to stand in front of the patrol car and asked him to perform field sobriety tests. After appellant performed the heel-to-toe test, Trooper Martinez again told appellant to "stay right here," while he returned to his patrol car and dictated on tape that "subject gave several clues," including the fact that appellant had started too soon, lost his balance while being given instructions, failed to touch his heel to his toe, "stepped off the line two times," made an "improper turn," and used his hands for balance.

Trooper Martinez returned to where appellant was standing and told him to perform a "one-leg stand" test. After that test was completed, the trooper told appellant to remain where he was, and the trooper once again returned to his patrol car where he verbally recorded that appellant "gave several clues" to intoxication and noted that appellant swayed, hopped, and put his foot down twice. Trooper Martinez recorded that he had given appellant "a second chance to do it," but appellant "indicated the same clues." Trooper Martinez then dictated: "Subject is going to be placed under arrest for DWI." The videotape then shows Trooper Martinez returning to appellant, saying, "I believe you are drunk," and arresting him.

After appellant was charged with DWI, he filed a motion to suppress the audio portion of the patrol-car videotape, claiming that it contained Trooper Martinez's "bolstering, self-serving statements about what he was allegedly doing and seeing." It was "a highly prejudicial and inflammatory narrative" of what Trooper Martinez

would have the viewer believe was taking place. The trial judge denied appellant's motion and concluded that the audio narrative was admissible as a "present sense impression."[3] Appellant then pled nolo contendere and appealed the trial court's ruling on his motion to suppress Trooper Martinez's orally recorded factual observations during his DWI investigation.

The court of appeals concluded that the trial court had erred. It held that Trooper Martinez's recorded commentary did not qualify as a present sense impression:

> Instead, his comments are a calculated narrative statement in which Martinez does not merely explain or describe events, but participates in and even creates some of the events he reports in the course of collecting evidence.... It therefore appears that Martinez recorded his comments not as an objective observer, but as a law enforcement officer, as a lay witness, and as an expert witness cataloging evidence and opinions for use in [appellant's] prosecution.[4]

Put bluntly, "Martinez's narrative is the functional equivalent of a police offense report[.]"[5]

We granted the State's petition for review to decide this important issue of state evidentiary law which, we understand, has arisen in several other cases as well.[6]

## II.

The hearsay doctrine, codified in Rules 801 and 802 of the Texas Rules of Evidence, is designed to exclude out-of-court statements offered for the truth of the matter asserted that pose any of the four "hearsay dangers" of faulty perception, faulty memory, accidental miscommunication, or insincerity.[7] The numerous exceptions to the hearsay rule set out in Rules 803 and 804[8] are based upon the rationale that some hearsay statements contain such strong independent, circumstantial guarantees of trustworthiness that the risk of the four hearsay dangers is minimal while the probative value of such evidence is high.[9]

---

**3.** TEX.R. EVID. 803(1).

**4.** *Fischer,* 207 S.W.3d at 859.

**5.** *Id.*

**6.** *See id.* at 848 n. 1 (noting that similar issues have arisen "in this and other courts," but that the merits of the question of contemporaneously recording an officer's factual observations during his criminal investigation of a suspect had "never been fully addressed"); *see also Evans v. State,* No. 14–05–00332–CR, 2006 WL 1594000, 2006 Tex.App. LEXIS 5027 (Tex.App.-Houston [14th Dist.] June 13, 2006, pet. ref'd) (not designated for publication) (concluding that Trooper Martinez's narrative of his on-the-scene factual observations of a DWI suspect was cumulative and thus any error was harmless); *Thompson v. State,* No. 12–03–00014–CR, 2003 WL 22839810, 2003 Tex.App. LEXIS 10088 (Tex.App.-Tyler Nov. 26, 2003, pet. ref'd) (not designated for publication) (officer's contemporaneously recorded, patrol-car videotaped statements concerning driver's actions were hearsay because they were factual "matters observed by a po-

lice officer in a criminal case"; "the trial court erred in admitting [the officer's] commentary on the audio portion of the videotape recorded while following" the defendant, but error was harmless).

**7.** *See* Olin G. Wellborn III, *The Definition of Hearsay in the Federal Rules of Evidence,* 61 TEX. L.REV. 49, 52–53 (1982); Edmund M. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 HARV. L.REV. 177, 185–88 (1948); Laurence H. Tribe, *Triangulating Hearsay,* 87 HARV. L.REV. 957, 958–61 (1974).

**8.** Additional exemptions from the operation of the hearsay rule are set out in Rule 801 which simply defines those matters—such as party admissions, prior consistent statements, etc.—out of the rule itself.

**9.** *See* 5 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1420–1423, at 251–55 (Chadbourn rev.1974) (discussing the exceptions to the hearsay rule and noting that they have been generally based upon some combination

The twenty-four hearsay exceptions listed in Texas Rule 803 may be roughly categorized into (1) unreflective statements, (2) reliable documents, and (3) reputation evidence. The rationale for all of the exceptions is that, over time, experience has shown that these types of statements are generally reliable and trustworthy.

■ The first set of hearsay exceptions, unreflective statements, are "street cor-ner" utterances made by ordinary people before any thoughts of litigation have crystallized.[10] These unreflective statements used to be called "res gestae," an imprecise Latin legalese term,[11] because the speaker was not thinking about the legal consequences of his statements. In most instances, the speaker was not thinking at all; the statement was made without any reflection, thought process, or motive to fabricate or exaggerate.[12]

of the unavailability of the declarant, the reliability of the declaration, or the presumed inefficiency of any possible cross-examination).

10. This is like the rationale used by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 61–62, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington*, 547 U.S. 813, 821–22, 126 S.Ct. 2266, 2273–74, 165 L.Ed.2d 224 (2006), to distinguish street-corner "nontestimonial" statements to law enforcement officers from litigation-oriented "testimonial" statements. Police interrogation statements relating to past events relevant to a criminal prosecution are "testimonial statements" for purposes of the Confrontation Clause, in part because of their adversarial nature and, in part, because the reasonable declarant would recognize that the statements could be used in a future criminal prosecution. *See Davis*, 547 U.S. at 821–22, 126 S.Ct. at 2273–74 (discussing when statements made to law enforcement personnel during a 911 call or at a crime scene are "testimonial" and thus subject to the requirements of the Sixth Amendment's Confrontation Clause; concluding that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").

When the police are engaged in the competitive enterprise of detecting crime, investigating crime, and gathering evidence for criminal prosecution, statements gathered during their interrogations are testimonial "as a mat-ter of law." *Brooks v. State*, 132 S.W.3d 702, 707 (Tex.App.-Dallas 2004, pet. ref'd).

11. The Latin term "res gestae" literally translates as "things done." *See* Charles E. Moylan, Jr., *Res Gestae, Or Why Is that Event Speaking and What Is It Doing in this Courtroom?*, 63 A.B.A.J. 968 (1977); 1A Roy R. Ray, Texas Practice: Texas Law of Evidence Civil and Criminal § 911, at 144–45 (3d ed.1980) (use of term "res gestae" creates confusion); G.T. Banks, Comment, *Res Gestae in the Texas Court of Criminal Appeals: A Method to Their Madness?*, 50 Tex. L.Rev. 119, 119 (1971) (noting that most American courts had "use[d] the term to some extent, but the Texas Court of Criminal Appeals seems to have gone the furthest in distilling chaos from simplicity"); Michael E. Bornhouser, Comment, *Res Gestae: A Synonym for Confusion*, 20 Baylor L.Rev. 229, 229 (1968) (the term res gestae "has been used to mean so many things that it is impossible to know exactly what it does mean").

12. *See Davis*, 547 U.S. at 826–32, 126 S.Ct. at 2276–79 (911 caller seeking immediate assistance during an emergency and describing events as they were occurring was making non-testimonial utterances, while a different domestic-violence victim, who was no longer in the midst of an emergency and was responding to police interrogation concerning recent past events, had time to reflect upon her answers, thus her responses were "testimonial"; *compare United States v. Manfre*, 368 F.3d 832, 840 (8th Cir.2004) (noting that declarant's description of a recent conversation with a third person was not an unreflective present sense impression because the "opportunity for strategic modification undercuts the reliability that spontaneity insures" as the declarant had to first drive or walk to meet the third person).

One of those "unreflective statements" exceptions to the hearsay rule is defined in Rule 803(1), the present sense impression:

A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.[13]

Statements that qualify under this exception are not excluded by the hearsay rule, even though the declarant is available.[14]

Texas was the first jurisdiction to recognize this exception by name,[15] and its leading case, *Houston Oxygen Co. v. Davis*,[16] is cited in the advisory committee's note to Federal Rule 803(1).[17] The facts in that case are typical of those that support the exception. At trial, the passenger of a car going down the highway testified that he saw another car pass theirs going "sixty to sixty-five miles" an hour and that it was "bouncing up and down in the back and zig zagging."[18] The passenger then testified that the driver of the car turned to him and said that "they must have been drunk, that we would find them somewhere on the road wrecked if they kept that rate of speed up."[19] Sure enough, five miles down the road the speeding car hit another vehicle and caused the plaintiff's injuries. The Texas Supreme Court held that the passenger's recitation of what the driver said to him at the time the speeding car passed them was admissible as a present sense impression because "[i]t is sufficiently spontaneous to save it from the suspicion of being manufactured evidence.

There was no time for a calculated statement."[20]

■ The rationale for the exception is that the contemporaneity of the statement with the event that it describes eliminates all danger of faulty memory and virtually all danger of insincerity. This Court has previously explained that rationale:

If a person observes some situation or happening which is not at all startling or shocking in its nature, nor actually producing excitement in the observer, the observer may yet have occasion to comment on what he sees (or learns from other senses) *at the very time that he is receiving the impression*. Such a comment, as to a situation then before the declarant, does not have the safeguard of impulse, emotion, or excitement, but there are other safeguards. In the first place, the report at the moment of the thing then seen, heard, etc., is safe from any error from defect of *memory* of the declarant. Secondly, there is little or no *time* for calculated misstatement, and thirdly, the statement will usually be made to another (the witness who reports it) who would have equal opportunities to observe and hence to check a misstatement. Consequently, it is believed that such comments, strictly limited to reports of *present* sense-impressions, have such exceptional reliability as to warrant their inclusion within the hearsay exception for Spontaneous Declarations.[21]

13. TEX.R. EVID. 803(1).

14. TEX.R. EVID. 803.

15. 1A Roy R. Ray, *supra*, note 11, § 916, at 159–60 (citing *Houston Oxygen Co.* and noting that "the report at the moment of the thing then seen, heard, etc. is safe from any error from defect of *memory* of the declarant. Secondly, there is little or no *time* for calculated misstatement").

16. 139 Tex. 1, 161 S.W.2d 474 (1942).

17. FED.R.EVID. 803(1) advisory committee's note.

18. 139 Tex. at 5, 161 S.W.2d at 476.

19. *Id.*

20. *Id.* at 6, 161 S.W.2d at 476.

21. *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex.Crim.App.1992) (quoting 1A R. Ray, *supra*, § 916, at 158–59).

■ The rule is predicated on the notion that "the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes."[22] It is "instinctive, rather than deliberate."[23] If the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability of the statements and renders them inadmissible under the rule.[24]

■ Once reflective narratives, calculated statements, deliberate opinions, conclusions, or conscious "thinking-it-through" statements enter the picture, the present sense impression exception no longer allows their admission.[25] "Thinking about it" destroys the unreflective nature required of a present sense impression.[26]

The State's first ground for review claims that the court of appeals in this case held that Rule 803(8)(B), which ex-

**22.** *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545, 554 (1976).

**23.** *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387, 389 (1974); *see also United States v. Brewer*, 36 F.3d 266, 272 (2d Cir. 1994) (quoting treatise stating that the underlying rationale for the exception is that "statements of present sense impression are considered reliable because the immediacy eliminates the concern for lack of memory and precludes time for intentional deception.") (quoting 4 LOUISELL, FEDERAL EVIDENCE § 438 (1980)); *United States v. Peacock*, 654 F.2d 339, 350 (5th Cir.1981) (allowing testimony under FED.R.EVID. 803(1) when the declarant described a conversation to his wife "immediately following the telephone conversation" because there was "no time" for the declarant to "consciously manipulate the truth").

**24.** *See, e.g., Hallums v. United States*, 841 A.2d 1270, 1277 (D.C.2004) (recognizing the exception, but warning that "care must be taken to ensure that this exception is not used to admit statements that circumstances reveal were not truly spontaneous, but instead involved conscious reflection or recall from memory"); *Illinois Central R.R. Co. v. Lowery*, 184 Ala. 443, 63 So. 952, 953 (1913) (noting that the "mere fact that a declaration is contemporaneous with the transaction in issue, and even relates to it and is prompted by it in a general way, does not render it admissible in evidence.... The declaration must be instinctive rather than deliberate-in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action.").

**25.** *See Houston Oxygen Co.*, 139 Tex. at 6, 161 S.W.2d at 476 (noting that there was "no time

for a calculated statement"); *Anderson v. State*, 15 S.W.3d 177, 183–84 (Tex.App.-Texarkana 2000, no pet.) (disallowing declarant's statements as a present sense impression because they "express an opinion or conclusion"); *Beauchamp v. State*, 870 S.W.2d 649, 652 (Tex.App.-El Paso 1994, pet. ref'd) ("We do not believe that a statement of opinion about a condition or event, as opposed to a statement of description or explanation about something observed or otherwise sensed, qualifies as a present sense impression."); *see also Cody v. Harris*, 409 F.3d 853, 860 (7th Cir.2005) (noting that one of the criteria for a present sense impression is that it describes "an event or condition without calculated narration"); *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir.1998) (citing WEINSTEIN'S EVIDENCE AND MCCORMICK'S EVIDENCE in stating that "the declaration must be an explanation or description of the event rather than a narration"); *United States v. DesAnges*, 921 F.Supp. 349, 359 n. 8 (W.D.Va.1996) (stating the present sense impressions are "highly trustworthy" because "there is little or no time for calculated misstatement").

**26.** *See United States v. Guevara*, 277 F.3d 111, 127 (2d Cir.2001) (affirming trial court's exclusion of conversations recorded by police officer as a present sense impression "because they were conclusions based upon information [the declarant] had processed rather than contemporaneous or spontaneous statements that were inherently trustworthy"); *United States v. Hamilton*, 948 F.Supp. 635, 639 (W.D.Ky.1996) ("With reflection, some reliability, which goes to the very essence of the present sense impression hearsay exception, is lost.").

plicitly excludes investigative reports by law enforcement from the public records exception to the hearsay rule, "trumps" Rule 803(1) and disallows any out-of-court factual observations by police officers. The court of appeals did not say this. Of course police officers, like the rest of humanity, may make spontaneous, unreflective, contemporaneous present sense impression statements that qualify for admission under Rule 803(1).[27] But the court of appeals appropriately looked to the rationale for excluding law enforce-ment reports under Rule 803(8)(B) by analogy.

■ Both the federal and Texas hearsay rules have always excluded the crime-scene or investigation observations of law enforcement officers because their factual observations, opinions, and narrations are made while the officer is "engaged in the often competitive enterprise of ferreting out crime."[28] Rule 803(8)(B) expressly excludes "[r]ecords, reports, statements, or data compilations ... setting forth ... matters observed by police officers and other law enforcement personnel" in a criminal case.[29] The reason for this exclu-

---

**27.** For example, suppose Officer Obie is quietly patrolling Congress Avenue when he hears his dispatcher say, "A bank robber just left Frost Bank in a red Hummer with a black flag on the back window." A moment later the dispatcher hears Officer Obie: "Oh my gosh! A red Hummer with a black flag just passed me going 60 m.p.h." That statement would undoubtedly qualify as either a present sense impression or, depending upon the excitement in Officer Obie's voice, an excited utterance under TEX.R. EVID. 803(2). That statement was an unreflective, unthinking, uncalculated description of what he had just seen. *See, e.g., Green v. State*, 876 S.W.2d 226, 228 (Tex.App.-Beaumont 1994, no pet.) (officer's testimony that two witnesses shouted "The man in the brown trench coat was shooting" as they were running from the direction in which shots were fired was admissible under the rule; declarants were describing an event they had seen almost immediately before encountering officer); *see also United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir.2001) (upholding admission of surveilling officer's contemporaneous description of defendant and his movements at the back of apartment building via radio to his partner who could not see the defendant from his post at the front of the apartment building); *State v. Penland*, 132 Ohio App.3d 176, 724 N.E.2d 841, 845–47 (1998) (police officer's statements to dispatcher as he was pursuing fleeing suspect on foot and describing the suspect, his appearance, and his ultimate apprehension qualified as present sense impression statements because "[t]he circumstances surrounding the officer's transmission of the statements, especially the perilous nature of the officer's pursuit of the appellant, supply sufficient indicia of the statements'

trustworthiness."); *Knudson v. Director, North Dakota Dept. of Trans.*, 530 N.W.2d 313, 317–18 (N.D.1995) (in license-revocation hearing, testimony that patrol officer reported on his radio that he "heard the accident take place" 100 yards away was admissible as his present sense impression).

**28.** *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

**29.** FED.R.EVID. 803(8)(B); TEX R. EVID. 803(8)(B). Of course, Rule 803(8)(B) does not necessarily apply to law-enforcement reports that are prepared in a non-adversarial setting, that are unrelated to any specific litigation, and that record objective, neutral observations. *See Pondexter v. State*, 942 S.W.2d 577, 585 (Tex.Crim.App.1996) ("We know that the reason for Federal Rule of Evidence 803(8)(B), after which the Texas rule was modeled, was the presumed unreliability of observations that are made by officers at the scene of a crime," but stating that when police officer was performing his ordinary, routine duties of recording the property that was taken in and out of the police property room, his observations and notations should be presumed reliable; matters observed or recorded by police officers are admissible under Rule 803(8)(B) if the observations are made and recorded in a ministerial manner); *McLeod v. State*, 56 S.W.3d 704, 710 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (noting that the information conveyed in a fingerprint card was made under a "duty imposed by law as to which matters there was a duty to report," and that card contained only routine observations, made in connection with the defendant's prior DUI conviction and should therefore be presumed reliable under Rule

sion is the inherently adversarial nature of any on-the-scene or *post hoc* investigation of a criminal suspect.[30] Congress explained the rationale for the rule excluding factual observations by investigating police officers from the public records exception to the hearsay rule:

> Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.[31]

Although Rule 803(8)(B) does not "trump" Rule 803(1), the basis for exclusion of police reports and investigative recordings is exactly the same under both rules. The recorded factual observations made by police officers investigating a suspected crime are not the type of "non-reflective" street-corner statements of objective observers that the present sense impression exception is designed to allow.[32] Courts admit present sense impression statements precisely because they are non-narrative, off-hand comments made without any thought of potential litigation by a neutral and detached observer without any motive to fabricate, falsify, or otherwise exaggerate his observations.[33]

803(8)(B)); *see generally, United States v. Quezada,* 754 F.2d 1190, 1193–94 (5th Cir.1985) (admitting a deportation warrant under Rule and noting that the recording of unambiguous factual matter was inherently reliable because it was merely the result of a ministerial objective observation and had none of the subjective features of reports made in a more adversarial setting, such as the investigation of a crime scene).

**30.** *See Pondexter,* 942 S.W.2d at 585 (Rule 803(8)(B), which excludes factual matters observed by police officers, applies where possible impairment of judgment is implicated, such as observations made by officers at the scene of a crime); *Cole v. State,* 839 S.W.2d 798, 811–12 (Tex.Crim.App.1992) (op. on reh'g) (quoting the legislative history of FED. R.EVID. 803(8)(B) which based the exclusion of police reports on the fact that they are created in an adversarial setting: " 'Police reports, especially in criminal cases, tend to be one-sided and self-serving. They are *frequently prepared for the use of prosecutors,* who use such reports in deciding whether to prosecute.' "); *United States v. Quezada,* 754 F.2d 1190, 1193–94 (5th Cir.1985) (stating that the hearsay rule excluding police offense reports "is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime," and noting that "a number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective en-

deavor of investigating a crime and evaluating the results of that investigation").

**31.** Senate Report No. 1277, 93d Cong.2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 7051, 7064 (quoted in *United States v. Pena–Gutierrez,* 222 F.3d 1080, 1087 (9th Cir.2000)); *see also* Fed.R.Evid. 803, advisory committee's note (noting that the exclusionary language of Rule 803(8)(B) "is properly applied so as to exclude only those law enforcement reports that are subjective and made under adversarial circumstances").

**32.** *See Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545, 554 (1976) ("It must be certain from the circumstances that the utterance is a reflex product of immediate sensual impressions, unaided by retrospective mental processes."); *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387, 389 (1974) (present sense impression is "instinctive, rather than deliberative"); *compare United States v. Hernandez–Rojas,* 617 F.2d 533, 535 (9th Cir. 1980) (stating that "the subjective report made by a law enforcement official in an on-the-scene investigation ... lacks sufficient guarantees of trustworthiness because [it is] made in an adversary setting [and is] likely to be used in litigation").

**33.** *See, e.g., Houston Oxygen Co. v. Davis,* 139 Tex. 1, 6, 161 S.W.2d 474, 476 (1942); *Cody v. Harris,* 409 F.3d 853, 860 (7th Cir.2005) ("The three criteria for admission of a statement as a present sense impression are: '(1) the statement must describe an event or con-

■ Conversely, on-the-scene observations and narrations of a police officer conducting a roadside investigation into a suspected DWI offense are fraught with the thought of a future prosecution: the police officer is gathering evidence to use in deciding whether to arrest and charge someone with a crime.[34] Calculation and criminal litigation shimmer in the air; the officer is gathering evidence, he is not making an off-hand, non-reflective observation about the world as it passes by.[35] Similarly, factual observations, narrations, opinions, and conclusions made by a citizen or bystander that might be intended by the declarant to be made with an eye toward future litigation or evidentiary use are inadmissible under the rule.[36]

### III.

■ In this case, Trooper Martinez turned on his patrol-car video camera and microphone even before he detained appellant. He did this to accurately record his investigation and preserve that interaction for possible trial.[37] He continuously re-

---

dition *without calculated narration;* (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter'") (emphasis added); *United States v. Mitchell,* 145 F.3d 572, 576 (3rd Cir.1998).

34. *See Wilson v. State,* 680 P.2d 1173, 1178 (Alaska Ct.App.1984) (stating that the police officer's dictated observations as he was following suspected DWI driver were not admissible under hearsay rule; although the officer's comments were "arguably present sense impressions," the statements were excludable because they "were, in effect, his report on the incident; as such, they did not fit within any exceptions to the hearsay rule").

35. *See United States v. Woods,* 301 F.3d 556, 562 (7th Cir.2002) ("A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions."); *see also State v. Goodloe,* No. 32860-7-II, 130 Wash.App. 1039, 2005 WL 3164296, at *2-3, 2005 Wash.App. LEXIS 3048, at *5-7 (Wash.Ct.App. Nov. 29, 2005) (not designated for publication) (police officer's recorded statements to another officer concerning "controlled [drug] buy" were not admissible under present sense impression exception to the hearsay rule; while the statements "satisfy many of the elements of a present sense impression, they do not satisfy the most critical element: that the events evoke the utterance. Here, they were part of a carefully planned investigation for the pur-

pose of gathering evidence against" the defendant); *see generally, Davis v. Washington,* 547 U.S. 813, 829–32, 126 S.Ct. 2266, 2278–79, 165 L.Ed.2d 224 (2006) (distinguishing between "nontestimonial" cries for assistance in an emergency and non-emergency "testimonial" statements about recent past events).

36. *See, e.g., Boyd v. City of Oakland,* 458 F.Supp.2d 1015, 1036–37 (D.Cal.2006) (noting, in civil-rights suit alleging a public police strip-search, that the nature of the plaintiff's statements to his mother—who was also his lawyer—raised the possibility that he was "perhaps contemplating litigation" and that "constitutes a motive to lie"; further, the "declaration shows that it was not a statement made spontaneously and without reflection. Rather than being a burst of words describing what he was presently perceiving or had perceived immediately beforehand, [plaintiff's] declaration consists of a lengthy, detailed narrative account. The coherence and structure of this account shows that [plaintiff] 'was reflecting on the event' rather than spontaneously reacting to a present sensory experience").

37. This is a fine law enforcement policy, and an audio report may assist an officer as an *aide memoire* to refresh his recollection before testifying, just as a written offense report assists him in recollecting the events that had occurred. But an offense report, in any form, is not admissible under the hearsay rule; it is specifically barred by Rule 803(8)(B). Whether that offense report is written on paper or recorded digitally, it is still an offense report that sets out "matters observed by police officers and other law enforcement personnel."

ferred to appellant as "the Subject"—the subject of his investigation. He made four separate trips back to his patrol car for the specific purposes of narrating what he had seen, smelled, and heard during his investigatory stop. He offered his opinions and conclusions about what his investigation of appellant had revealed. He narrated his impressions of how appellant had performed on various investigatory field tests and then announced his conclusion: "Subject is going to be placed under arrest for DWI." The entire tape-recorded narrative is, as the court of appeals concluded, a speaking offense report.[38]

Throughout this incident, Trooper Martinez was professionally and politely "engaged in the competitive enterprise of ferreting out crime." [39] One applauds him for that worthy endeavor, but the adversarial nature of this on-the-scene investigation of a potential crime is entirely at odds with the unreflective, instinctive comments of a "street-corner" speaker who was not thinking about the legal consequences of his statements.

The State argues that "[h]earsay may be admissible under one hearsay exception even if it is inadmissible under another hearsay exception." [40] That is correct, just as Justice Yates concluded in her concurring opinion in this case.[41] Here, however, the rationale for excluding Trooper Martinez's recorded oral narrative of his on-the-scene investigation as a present sense impression under Rule 803(1) is precisely the same as the rationale for excluding that evidence under Rule 803(8)(B): the presumed unreliability of law enforcement observations in an adversarial, investigative setting. Thus, Rule 803(1) cannot be used "as a 'back door' to admit evidence explicitly inadmissible under Rule 803(8)(B)." [42]

The State relies upon several out-of-state cases for the proposition that law enforcement narrative observations may be admissible under the present sense impression exception to the hearsay rule.

In one case, *Utah v. Blubaugh*,[43] the appellate court held that a video recording of the murder defendant's "messy home" was irrelevant and inadmissible, but harmless error, while the officer's audio description of that "messy home" was not objected-to at trial. In dicta, the reviewing court suggested that it was admissible as a present sense impression.[44] These might appear to be contradictory holdings, but the Utah court did not elaborate on its reasoning in the one-paragraph discussion. Nor does it appear that the aural recording was anything more than a description of the defendant's home. In any event, we agree with the Houston Court of Appeals that the issue of the admissibility of a recording of the factual observations of a law enforcement agent made during an adversarial investigation was not raised in that case.[45]

---

**38.** *Fischer,* 207 S.W.3d at 859.

**39.** *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

**40.** State's Brief at 7.

**41.** *Fischer,* 207 S.W.3d at 861–62 (Yates, J., concurring) ("Generally, each hearsay exception should be analyzed independently because 'evidence which is inadmissible under one hearsay exception may often be admissible under another exception,' " but concluding that "the factors rendering hearsay unreliable under Rule 803(8)(B) are relevant in assessing whether Martinez's statements constitute a present sense impression.").

**42.** *Cole v. State,* 839 S.W.2d 798, 811 (Tex. Crim.App.1992) (op. on reh'g).

**43.** 904 P.2d 688 (Utah App.1995).

**44.** *Id.* at 700.

**45.** *See Fischer,* 207 S.W.3d at 854 (concluding that "the narrow issue before us was not presented in *Blubaugh,* but rather, appears to have been waived").

The State also cites *United States v. Rideout*,[46] a vacated and unpublished opinion from the Fourth Circuit in which the appellate court noted that the defendant's "blanket objection" to the audio portion of a videotaped recording showing a drug-infested neighborhood (described as "an open air crack market") did not preserve any error in its admission.[47] But the officer in *Rideout* was not focused upon the investigation of any particular person. Apparently, the videotape was simply a visual and audio recording of the appearance of a neighborhood, much like a TV newscast showing and describing the destruction of a hurricane. As with *Blubaugh*, we conclude that the question of whether a police office's narrative descriptions of his factual observations in an adversarial investigation was neither present nor raised in *Rideout*.

The State relies upon *Ohio v. Penland*,[48] a case that appropriately concluded that a radioed recording by an officer in hot pursuit of a fleeing suspect was admissible as a present sense impression.[49] The court stated that the officer

> while pursuing the appellant, transmitted over his radio a description of the appellant, the appellant's possession and disposal of the gun, and his apprehension. Each of the taped statements from that radio transmission described an event or condition perceived by the officer, either as he perceived it or immediately thereafter. The circumstances surrounding the officer's transmission of the statements, especially the perilous nature of the officer's pursuit of the appellant, supply sufficient indicia of the statements' trustworthiness.[50]

This scenario—the description of a chase while it is occurring, transmitted to his dispatcher—is precisely the sort of unreflective, uncalculated, non-testimonial "street corner" statement that is admissible under Rule 803(1), even when made by a law enforcement officer.[51] Trooper Martinez, unlike the pursuing officer in *Penland*, calmly walked back and forth from his patrol car to the suspect, and he carefully and deliberately narrated the results of his DWI field tests and investigation. Trooper Martinez's recorded statements are "testimonial" and reflective in nature; they are the type of statements that are made for evidentiary use in a future criminal proceeding.[52]

In sum, most of the statements made by Trooper Martinez on the videotape constituted a calculated narrative in an adversarial, investigative setting.[53] These particular statements may be entirely reliable ones, but the setting is one that human experience and the law recognizes is brimming with the potential for exaggeration or misstatement.

---

46. 80 Fed.Appx. 836, 843 (4th Cir.2003) (not designated for publication), *vacated on other grounds*, 543 U.S. 1116, 125 S.Ct. 1109, 160 L.Ed.2d 989 (2005).

47. *Id.* at 843 (stating that FED.R.EVID. 803(1) "permits the admission of hearsay when it involves a statement 'describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.' Here, [defendant] has given us no reason to doubt that any narration heard by the jury fit within this rule. Accordingly, we find no error in the denial of [defendant's] blanket objection.").

48. 132 Ohio App.3d 176, 724 N.E.2d 841 (1998).

49. *Id.* at 845–46.

50. *Id.*

51. *See supra*, note 27.

52. *See Davis v. Washington*, 547 U.S. 813, 829–30, 126 S.Ct. 2266, 2278, 165 L.Ed.2d 224 (2006).

53. *See, e.g., Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1036–37 (N.D.Cal.2006).

We therefore agree with the court of appeals which had held that Trooper Martinez's recorded investigation narrative did not qualify for admission as a present sense impression under Rule 803(1). At trial, Trooper Martinez may testify to exactly what he saw and heard during his investigative detention of appellant, and his words might be the very same as those he used during his on-the-scene narrative, but they must be given under oath and subject to cross-examination.

We affirm the judgment of the court of appeals.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., MEYERS, and KEASLER, JJ., joined.

HERVEY, J., filed a dissenting opinion in which KELLER, P.J., MEYERS, and KEASLER, JJ., joined.

The State claims that the court of appeals erroneously decided that Rule 803(8)(B) "trumps" Rule 803(1). The Court decides that Rule 803(8)(B) does not "trump" Rule 803(1)[1] and also states that the court of appeals did not say this.[2] The court of appeals and this Court have, however, essentially decided that Rule 803(8)(B) "trumps" Rule 803(1).

The following hypothetical illustrates how the Court's opinion does, in fact, decide that Rule 803(8)(B) "trumps" Rule 803(1). Suppose that a police officer and a private citizen come upon the scene of a traffic accident involving two cars. The police officer and the private citizen walk to one of the wrecked cars and observe an open container of alcohol inside. It takes the police officer and the private citizen a few seconds to walk over to another bystander at the accident scene. Having had the opportunity of "thinking about it" during this brief period of time, the police officer and the private citizen immediately state to the bystander that they observed an open container of alcohol inside one of the wrecked cars. Even though the police officer's and the private citizen's out-of-court declarations to the bystander were based on their observations of the same event at the same time and were made under identical circumstances, the Court's opinion apparently would allow the private citizen's out-of-court declaration to be admitted as a present sense impression,[3] but would exclude the police officer's out-of-court declaration as a "speaking offense report."[4] By admitting the former while excluding the latter, the Court's opinion really does decide that Rule 803(8)(B) "trumps" Rule 803(1).[5]

1. *See* Maj. Op. at 383 (Rule 803(8)(B) does not "trump" Rule 803(1)).

2. *See* Maj. Op. at 382 ("The court of appeals did not say this.").

3. A trial court would not abuse its discretion to admit the private citizen's out-of-court declaration as a present sense impression under Rule 803(1), since it is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

4. Another hypothetical illustrating this principle would be a private citizen at the scene in this case observing the same events as Martinez and a few seconds later (i.e., "immediately thereafter") giving a description of these events on audiotape (such as, for example,

appellant twice failing the one-leg stand test). Under the Court's opinion, these private citizen out-of-court recorded statements apparently would qualify as present sense impressions.

5. If Rule 803(8)(B) does not "trump" Rule 803(1), then it would not be necessary for the Court's opinion to state that Rule 803(1) cannot be used as a "back door" to admit evidence excluded by Rule 803(8)(B). *See* Maj. Op. at 385 ("Rule 803(1) cannot be used as a back door to admit evidence explicitly inadmissible under Rule 803(8)(B)") (internal quotes omitted). This echoes the decision in *Cole v. State,* which decided that the business records exception to the hearsay rule set out in Rule 803(6) also cannot be used as a "back door" to admit evidence excluded by Rule

I disagree with the Court that, in analyzing whether Martinez's out-of-court statements qualify as present sense impressions, it is appropriate to look "to the rationale for excluding law enforcement reports under Rule 803(8)(B) by analogy."[6] This case would present a "speaking offense report"[7] scenario under Rule 803(8)(B) had Martinez, in accordance with how offense reports are usually prepared, dictated his on-the-scene observations as part of an offense report some time after the events in question after having had the opportunity of "[t]hinking about it." But, that is not what occurred here. The brief period of time (a few seconds) between Martinez's observation of the events and his description of them on the audiotape provided him with very little opportunity of "[t]hinking about it" and does not present a setting "brimming with the potential for exaggeration or misstatement."[8] And, though Martinez may have been "engaged in the competitive enterprise of ferreting out crime,"[9] this short time interval provided little or no time for calculated misstatement[10] and it still eliminated the four "hearsay dangers" of faulty perception, faulty memory, accidental miscommunication, or insincerity.[11] The contemporaneity and "immediately thereafter" requirements of Rule 803(1) remove any analogy between cases like this and Rule 803(8)(B).[12]

The admissibility of the statements at issue in this case should be analyzed under the usual factors for determining whether statements qualify as present sense impressions under Rule 803(1).[13] Two essential elements of the present sense impres-

803(8)(B). *See Cole v. State,* 839 S.W.2d 798, 806–13 (Tex.Cr.App.1990) (op. on reh'g).

Some of the commentary to FED.R.EVID. 803 suggests, however, that a proper application of Rule 803(8)(B) would not create a conflict with Rule 803(6); thus not requiring a decision whether Rule 803(6) could be used as a "back door" for admitting evidence that is inadmissible under Rule 803(8)(B). *See* USCS Federal Rules of Evidence, Rule 803 (1998), commentary by Stephen A. Saltzburg, Daniel J. Capra, and Michael M. Martin at 377–78 stating:

> In criminal cases, the argument has sometimes been made that a report that is inadmissible due to the exclusionary language of Rule 803(8)(B) ... can nonetheless be admitted as a record of regularly conducted activity under Rule 803(6). However, if the exclusionary language is properly applied so as to exclude only those law enforcement reports that are subjective and made under adversarial circumstances—which is the position taken by most Courts, as discussed above—then there is no conflict between the Rules. This is because records that are prepared in anticipation of litigation are excluded under the trustworthiness criterion of Rule 803(6); and those are, in effect, the only records that are excluded under the prevailing view of Rule 803(8). Accordingly, under the predominant approach to Rule 803(8), the issue of whether a law enforcement report excluded under Rule

> 803(8) can nonetheless be admitted under Rule 803(6) does not arise. Such a report is by definition untrustworthy and inadmissible under both Rules. (Citation omitted).

**6.** *See* Maj. Op. at 381–82.

**7.** *See* Maj. Op. at 376–77, 385.

**8.** *See* Maj. Op. at 386.

**9.** *See* Maj. Op. at 382, 385.

**10.** *See* Maj. Op. at 380 fn. 15.

**11.** *See* Maj. Op. at 378–79, 380 fn. 15.

**12.** In addition, even if Martinez's out-of-court statements could be considered a "speaking offense report," Rule 803(8)(B) arguably would not exclude these out-of-court statements, since Martinez apparently would have testified at trial and been subject to cross-examination on them. *See* Saltzburg, *supra,* at 377 (noting that most courts have held that the exclusion in Rule 803(8)(B) "is inapplicable where the public official who prepared the report actually testifies at trial").

**13.** The following authorities present an accurate picture of the history and scope of the present sense impression exception to the hearsay rule from when it was part of the

sion exception to the hearsay rule are: (1) substantial contemporaneity between the out-of-court statements and the event or condition they describe, and (2) spontaneity of these out-of-court statements.[14] As to the substantial contemporaneity requirement, commentary to Federal Rule 803 states:

> Rule 803(1) adopts the increasingly accepted new hearsay exception for statements describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter. The theory underlying Rule 803(1), according to the Advisory Committee Note, is that "substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation." The critical element, therefore, is contemporaneity; the statement must be made at the time that the event or condition is being perceived or immediately thereafter. If the statement is made right at the time of the event, it is assumed that the declarant had no time to lie about it; and there is little chance of misstatement due to loss of memory. While contemporaneity is critical to admissibility, there is in fact no talismanic time period for admission as a present sense impression. Admissibility is determined on a case-by-case basis, in which the Court investigates the circumstances of the statement to determine whether the declarant had significant time for reflection.[15]

And, in *Illinois Central R.R. Co. v. Lowery*, 184 Ala. 443, 63 So. 952, 953 (1913), the Alabama Supreme Court described the spontaneity requirement as follows:

> The mere fact that a declaration is contemporaneous with the transaction in issue, and even relates to and is prompted by it in a general way, does not render it admissible in evidence. Such a declaration, to have testimonial verity and value, and hence to be admissible by way of exception to the rule that excludes hearsay in general, must directly relate to and in some degree illustrate and explain the occurrence in question; and essentially, it must be the apparently spontaneous product of that occurrence operating upon the visual, auditory, or other perceptive senses of the speaker. **The declaration must be instinctive rather than deliberative—in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action.** These are the indicia of verity which the law accepts as a substitute for the usual requirements of an oath and opportunity for cross-examination.

(Emphasis supplied).[16]

---

common-law *res gestae* rule to its current codification in the federal and state evidentiary rules. *See Hallums v. United States*, 841 A.2d 1270, 1276–79 (D.C.2004); USCS Federal Rules of Evidence, Rule 803(1) (1998), Advisory Committee Notes at 335–356; Saltzburg, *supra*, at 357–61; Jon R. Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes*, 66 Iowa L. Rev. 869 (1981); Note, *Spontaneous Exclamations in the Absence of a Startling Event*, 46 Colum. L.Rev. 430 (1946).

**14.** *See Hallums*, 841 A.2d at 1277–78 (out-of-court statements sought to be admitted as present sense impressions must have been "made spontaneously and contemporaneously with the events described" and "care must be taken to ensure that [present sense impression exception] is not used to admit statements that circumstances reveal were not truly spontaneous, but instead involved conscious reflection or recall from memory"); Federal Rule 803(1), Advisory Committee Notes at 336 (spontaneity "is the key factor"); 46 Colum. L.Rev. at 437–38 (out-of-court statement must be spontaneous and contemporaneous with the event or condition).

**15.** Saltzburg, *supra* at 357.

**16.** *See also Municipality of Bethel Park v. Workmen's Compensation Appeal Board*, 161

Martinez's out-of-court factual assertions satisfy the contemporaneity requirement because they describe or explain events, which Martinez (the declarant) was observing at the time that he made the out-of-court statements or immediately thereafter. *See Hallums,* 841 A.2d at 1277 ("underlying rationale for the present sense impression exception is that '[s]tatements of present sense impression are considered reliable because the immediacy eliminates the concern for lack of memory and precludes time for intentional deception'"). Martinez's out-of-court factual assertions also satisfy the spontaneity requirement because they are "instinctive rather than deliberative-in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action." *See Lowery,* 63 So. at 953; [17] *Waltz,* supra at 876 (spontaneity is an inference drawn from the required absence of any appreciable time lapse between event or condition and descriptive comment); 46 Colum.L.Rev. at 439 (spontaneity requirement usually satisfied when contemporaneity requirement is satisfied).

There are in this particular case other reliability-insuring safeguards that may be absent in other present sense impression cases. For example, Martinez's out-of-court factual assertions apparently would have been elicited (not through a third-party witness) but through Martinez himself, who would have been subject to cross-examination on these statements.[18] In addition, Martinez's out-of-court factual assertions were captured on the audiotape and, therefore, would not be elicited at trial based only on his memory of the events. One of the most important reliability-insuring safeguards in this case is the videotape itself, which corroborates most of Martinez's out-of-court statements

---

Pa.Cmwlth. 274, 636 A.2d 1254, 1257 (1994) (applying this definition of "spontaneous" and discussing origin of present sense impression exception as being first espoused by "Professor James B. Thayer in Bedingfield's Case—Declarations as Part of the Res Gestae, 15 Am. L.Rev. 1 (1881), where he concluded that contemporaneous statements pertaining to any event, whether exciting or not, fell within the res gestae exception because the assurance of reliability stemmed not from the excitement of the circumstances but rather from the spontaneity of the utterance"); Waltz, *supra* at 870–75 (also crediting Professor Thayer with inventing the present sense impression exception and discussing origins of this exception up to its promulgation as Rule 803(1) in federal rules of evidence); 46 COLUM. L.REV. at 438 ("all the [spontaneity] requirement need mean is that there be no apparent motive to lie"); Advisory Committee Notes to Federal Rule 803(1) at 336 (spontaneity is a key factor).

**17.** It cannot be said that Martinez's out-of-court statements were premeditated, contrived, or planned, which are antonyms of "spontaneous." *See Roget's Desk Thesaurus* (2001) at 508.

**18.** *See Hallums,* 841 A.2d at 1276 (additional assurance of reliability is that out-of-court statement will usually have been made to a third person (usually the witness who testifies to it) who was also present at the event described and may be cross-examined on the statement) and at 1278–1279 (discussing varying approaches by other jurisdictions to admission of statements as present sense impressions, particularly a "corroboration" requirement as an additional safeguard of reliability); Saltzburg, *supra* at 357 ("To satisfy the timing, relationship, and event requirements, the [third-party] witness in Court is probably going to have to be able to corroborate to some extent that the event actually occurred, **unless the declarant is present to so testify** or there is some other source of corroboration") (emphasis supplied); Advisory Committee Notes to Federal Rule 803(1) at 336 ("The underlying theory of [Rule 803(1)] is that substantial contemporaneity of event and statement negative the likelihood of deliberate of [sic] conscious misrepresentation. Moreover, **if the witness is the declarant, he may be examined on the statement.** If the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement.") (emphasis supplied).

on the audio portion of this videotape.[19] Applying these considerations to this case, the trial court could not have abused its discretion to decide that Martinez's out-of-court factual assertions qualify as present sense impressions.[20]

The Court's opinion also seems to suggest that Martinez's out-of-court statements cannot qualify as present sense impressions because they are "testimonial" for purposes of federal constitutional Confrontation Clause analysis under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[21] It is not clear that Martinez's out-of-court statements are "testimonial." Even if they are, this Court has held that an out-of-court statement qualifying as an excited utterance under Rule 803(2) can also be "testimonial." *See generally Wall v. State*, 184 S.W.3d 730 (Tex.Cr.App.2006). The Court's opinion characterizes a present sense impression under Rule 803(1) and an excited utterance under Rule 803(2) as unreflective statements. *See* Maj. Op. at 379. If, under *Wall*, an excited utterance can be "testimonial," then so can a present sense impression. It is also noteworthy that Martinez's out-of-court factual assertions would be admissible at trial under *Crawford*, as long as Martinez was available for cross-examination.

Finally, the "[t]hinking about it" rationale in the Court's opinion does not apply to all of Martinez's out-of-court statements such as his out-of-court statement, "I smell alcohol," when Martinez asked appellant if he had any alcohol in the car.[22] In addi-

tion, the Court's opinion seems to suggest that the entire audiotape is inadmissible, when both appellant and the court of appeals have acknowledged that some portions of the audiotape "would be admissible." *See Fischer*, 207 S.W.3d at 850. For example, appellant's statement to Martinez that he had "Three Wines" should not be excluded by anything that the Court's opinion says.

I respectfully dissent.

---

19. For example, the videotape depicts appellant "swaying, hopping, and putting his foot down twice" while appellant was performing a one-leg stand test. "[A]lmost immediately" after this, Martinez can be heard saying that appellant was "swaying, hopping, and putting his foot down twice."

20. The reliability-insuring safeguards that qualify Martinez's out-of-court factual asser-

tions as present sense impressions should also make it very difficult, if not impossible, to conclude, under a proper application of Rule 803(8)(B), that these out-of-court statements are a "speaking offense report."

21. *See* Maj. Op. at 386, and at 379 fn. 10, and at 379 fn. 12, and at 384 fn. 35.

