ACCEPTED
03-13-00804-CR
4604985
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/23/2015 3:08:18 PM
JEFFREY D. KYLE
CLERK

# No. 03-13-00804-CR

In the
Court of Appeals
Third District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/23/2015 3:08:18 PM

JEFFREY D. KYLE
Clerk

## Kaitlyn Lucretia Ritcherson,
Appellant

v.

## The State of Texas,
Appellee

Appeal from the 331st Judicial District Court
Travis County, Texas
Cause Number D-1-DC-11-302663

## STATE'S BRIEF

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

*Oral argument is not requested*

# Table of Contents

Index of Authorities ............................................................................ ii

Summary of the State's Argument ....................................................... 1

Argument .............................................................................................. 7

*Reply Point One: The appellant was not entitled to an instruction on manslaughter.* ............................................................................... 7

*Reply Point Two: The appellant cannot complain about the exclusion of the video because she did not try to admit the video. Additionally, the trial court did not abuse its discretion in refusing to allow the appellant to question Detective Nelson about the appellant's out-of-court statements because he lacked personal knowledge of the statements and because the statements were hearsay. And any error in excluding the statements was harmless.* ............................................................................................... 18

*Reply Point Three: The trial court did not err in excluding the video during the punishment phase because the video contained hearsay, it was more prejudicial than probative, and admission was not required under the best evidence rule. And any error in excluding the video was harmless* ............................................................. 33

*Reply Point Four: The trial court did not abuse its discretion in admitting out-of-court statements under the excited utterance exception to the hearsay rule. And any error in admitting the statements was harmless* ......................................................... 40

Prayer .................................................................................................. 43

Certificate of Compliance and Service .............................................. 44

i

# Index of Authorities

**Cases**

*Apolinar v. State*, 155 S.W.3d 184 (Tex. Crim. App. 2005)..........16, 27
*Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011)...................18
*Blue v. State*, No. 04-11-00726-CR, 2012 Tex. App. LEXIS 7895 (Tex. App.—San Antonio 2012, pet. ref'd) (mem. op., not designated for publication) ........................................................................... 28, 30
*Cavazos v. State*, 382 S.W.3d 377 (Tex. Crim. App. 2012) ..7, 8, 10, 11, 32
*Dyke v. State*, No. 06-11-00129-CR, 2012 Tex. App. LEXIS 2181 (Tex. App.—Texarkana 2012, pet. ref'd) (mem. op., not designated for publication) .................................................................................31
*Fairow v. State*, 943 S.W.2d. 895 (Tex. Crim. App. 1997) ............... 25
*Fischer v. State*, 252 S.W.3d 375 (Tex. Crim. App. 2008) ............... 27
*Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006)........ 36
*Hartin* v. State, 2009 Tex. App. LEXIS 2765 (Tex. App.—Beaumont 2009, pet. dism'd) (mem. op., not designated for publication) ..... 25
*Ingram v. State*, 2012 Tex. App. LEXIS 260 (Tex. App.—Dallas 2012, pet. ref'd) (mem. op., not designated for publication) ....................31
*Jones v. State*, 843 S.W.2d 487 (Tex. Crim. App. 1992)................... 34
*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997) ......................17
*Matute v. State*, No. 03-13-00601-CR, 2014 Tex. App. LEXIS 12743 (Tex. App.—Austin Nov. 26, 2014, pet. filed March 3, 2015) (mem. op., not designated for publication) ........................................... 38
*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002).............. 17, 18
*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2001)......................17
*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990) ................17
*Whitaker v. State*, 286 S.W.3d 355 (Tex. Crim. App. 2009)............. 34
*Zuliani v. State*, 97 S.W. 3d 589 (Tex. Crim. App. 2003).................. 27

**Statutes**

Tex. Penal Code § 19.02.................................................................... 7
Tex. Penal Code § 19.04.................................................................... 7

**Rules**

Tex. R. App. Proc. 33.1.................................................................... 24

Tex. R. App. Proc. 44.2 ....................................................................17
Tex. R. Evid. 1002...........................................................................38
Tex. R. Evid. 103.............................................................................23
Tex. R. Evid. 403 ............................................................................35
Tex. R. Evid. 602 ............................................................................24
Tex. R. Evid. 801.............................................................................26
Tex. R. Evid. 802 ............................................................................26
Tex. R. Evid. 803 ............................................................................26

**No. 03-13-00804-CR**

In the
Court of Appeals
Third District
Austin, Texas

---

**Kaitlyn Lucretia Ritcherson,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 331st Judicial District Court
Travis County, Texas
Cause Number D-1-DC-11-302663

---

**STATE'S BRIEF**

---

To the Honorable Third Court of Appeals:

Now comes the State of Texas and files this brief in response to that of the appellant.

**Summary of the State's Argument**

***Point One:*** The appellant argues that the trial court erred when it denied her request for a jury instruction on manslaughter.

***Reply:*** Pulling out a knife, raising it up in the air, bringing it down in a single swing, stabbing the victim in the chest, and fleeing

the scene does not rationally support an inference that the appellant acted recklessly at the moment she stabbed the victim. Thus, she was not entitled to an instruction on manslaughter.

*Point Two:* The appellant argues that the trial court erred during the guilt/innocence phase of trial by excluding a video of her emotional outburst upon learning that the victim was going to die. She says she was harmed because the video shows that she did not intend to kill or seriously injure the victim.

*Reply:* The appellant never tried to admit the video into evidence during this phase of trial, so she has not preserved error on this complaint.

Instead, the record shows that the appellant wanted to question Detective Nelson about the statements that the appellant made to her mother while Detective Nelson was out of the room, and the trial court did not let her. This ruling was not an abuse of discretion for a couple of reasons:

First, Detective Nelson did not have personal knowledge of the statements. He did not personally observe or overhear the statements. In fact, he was not even in the room when the statements

were made. Thus, the trial court did not abuse its discretion in refusing to let the appellant question him about these statements.

Additionally, the trial court did not abuse its discretion because the statements were hearsay. The appellant argues that the hearsay exception for excited utterances applies. But the appellant's statements were made at the police station, after the police had conducted an investigation, questioned the appellant and her friends, and arrested the appellant for a felony offense. The appellant had a motive to fabricate or exaggerate, as well as two days to reflect on the stabbing. Additionally, her statements were predominantly self-serving. Considering all of the circumstances surrounding the statements, the trial court was well within its discretion in refusing to admit the statements as excited utterances.

Finally, error, if any, was harmless because the appellant's self-serving statements, made two days after the stabbing and after her arrest, are not very probative of her mental state at the time of the stabbing.

**Point Three:** The appellant argues that the trial court erred during the punishment phase of trial by excluding the same video.

3

She argues that she was harmed because the video shows her remorse.

*Reply:* During punishment, the appellant offered the video in its entirety. She never pointed out specific statements or portions of the video that she wanted admitted. The trial court is not obligated to sort through evidence in order to segregate the admissible from the excludable. Therefore, if any part of the video is inadmissible, the trial court could safely exclude it all. With this in mind, the trial court did not abuse its discretion in excluding the video for several reasons:

As argued in Point Two, the appellant's statements on the video are hearsay, and the trial court acted did not abuse its discretion in excluding these statements under the excited utterance exception.

Additionally, the trial court did not abuse its discretion in excluding the video under Rule 403 because the danger of unfair prejudice resulting from the extremely emotional video substantially outweighed the video's probative value, especially since the appellant's mother was allowed to testify about the contents of the video, namely, that the appellant was crying and upset, that she no

4

longer wanted to live, that she wanted to tell the victim's mother that she was sorry, and that there was never any intent to harm the victim.

Additionally, admission of the video was not required under the best evidence rule. This rule has no application at all when a party calls a participant or observer of a conversation to testify to it because it is the contents of the conversation, not the contents of the recording, that is the issue. Alternatively, since the appellant's mother participated in the conversation, her testimony describing the conversation is the best evidence of that conversation.

Finally, error, if any, in excluding the video was harmless because the appellant's mother testified about the contents of the video, including the appellant's remorse. Moreover, the video is not even good evidence of remorse because the appellant never really takes responsibility for stabbing the victim, and she is mostly concerned about herself. Considering all of this evidence, exclusion of the video did not have a substantial and injurious effect or influence on the jury's verdict.

***Point Four:*** The appellant argues that the trial court erred during the punishment phase of trial in admitting out-of-court

statements under the excited utterance exception to the hearsay rule. She argues that she was harmed because the statements concerned an incident where she attempted to stab her brother.

*Reply:* The trial court did not abuse its discretion in admitting these statements as excited utterances. Her mother and brother made the statements at 4 o'clock in the morning, while the police were at their front door and the appellant was cursing at everyone, immediately following a physical altercation with the appellant, which included pushing and shoving and the appellant swinging a knife at her brother. Furthermore, the responding officer testified that the scene was "very chaotic," that "a pretty major event had just happened," and that her mother and brother were "very excited," "upset," and appeared to be under the influence of a recent startling event.

And error, if any, in admitting these statements was harmless because the majority of the testimony about the out-of-court statements was pretty much the same as the testimony that her mother and brother gave themselves at trial. There is only one important difference: At the scene, her brother said that the appellant

swung a knife at him and tried to stab him. At trial, her brother testified that the appellant did not swing the knife. This is obviously a major difference, but it could not have had a substantial effect on the jury's verdict because the responding officer testified that the appellant herself admitted that she swung a knife at her brother.

### Argument

***Reply Point One:*** **The appellant was not entitled to an instruction on manslaughter.**

The appellant argues that the trial court erred when it denied her request for a jury instruction on manslaughter. 27RR 255-58.

A defendant is entitled to an instruction on an offense if she can show that 1) it is a lesser-included offense, and 2) there is some evidence that the defendant is guilty only of the lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012).

As a matter of law, manslaughter is a lesser-included offense of murder, as it was alleged in the indictment. *Cavazos,* at 384; Tex. Penal Code § 19.02; Tex. Penal Code § 19.04;  CR 20-21

The second prong requires a case-by-case analysis. The court must consider whether there was some evidence raised at trial from which

7

a rational jury could acquit the appellant of the greater offense of murder and convict her of the lesser-included offense of manslaughter. *Cavazos,* at 385. There must be some affirmative evidence that the appellant did not intend to cause serious bodily injury when she stabbed the victim, and there must be some affirmative evidence from which a rational juror could infer that the appellant was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of her conduct. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle the appellant to a charge on a lesser offense. *Id.* However, the evidence produced must be sufficient to establish the lesser-included offense as a "valid, rational alternative" to the charged offense. *Id.* If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative. *Id.* While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if the appellant is guilty, she is guilty only of the lesser-included offense. *Id.* Meeting this threshold requires more than mere

speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Id.*

It is undisputed that the appellant stabbed the victim in the chest during an altercation between two groups of people outside a night club in downtown Austin. Most of the witnesses denied seeing the stabbing, either because they were looking elsewhere or because their view was blocked. The two witnesses who testified about the actual stabbing gave differing accounts, but there is no evidence that the stabbing was a reckless act, under either account:

Stefne Henderson (the victim's friend) testified that the victim was walking away when the appellant raised a knife in the air, came up behind the victim, reached over the victim's shoulder, and stabbed the victim in the chest. 23RR 46-50, 97-100.

Ryan Moore (the appellant's friend) testified that the victim lunged at the appellant twice and took a swing at her. 27RR 168-71. He thought that the victim hit the appellant in the head with an object, like a shoe or cell phone, but he was not sure because he was not paying attention. 27RR 171-75. After the victim swung at the

9

appellant, the appellant swung back. It was a single, overhand swing. 27RR 176, 234, 246. Moore grabbed the appellant's hand and saw a knife. Moore tussled with the appellant for the knife, she dropped it, and he kicked it away. 27RR 176-78, 204.

The appellant's case is similar to *Cavazos*. There, the appellant was at a party when another man called him a faggot and threw a plastic beer cup at him. The appellant shot the man twice and fled the scene. A few days later, the appellant told a friend that he got drunk at a party and shot a guy but that he did not mean to shoot anyone. The appellant then fled to Mexico. *Id.* at 380.

The appellant argued that he was entitled to an instruction on manslaughter because his statement to his friend negated the element of intent and because there was evidence that he acted recklessly since it was reckless to pull out a loaded gun in a room full of people and shoot at a person. *Id.* at 385. The Court of Criminal Appeals disagreed:

> Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend "I didn't mean to shoot anyone" does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots. The evidence here does not support a finding of recklessness and does

not rise to level that would convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense.

*Id.*

Likewise, in this case, pulling out a knife, raising it up in the air, bringing it down in a single swing, stabbing the victim in the chest, and fleeing the scene does not rationally support an inference that the appellant acted recklessly at the moment she stabbed the victim. Thus, she was not entitled to an instruction on manslaughter.

The evidence that the appellant points to in her brief also does not rationally support a finding that she acted recklessly when she stabbed the victim:

### The wound track

The appellant points to the wound track, which she says contradicts witness Stefne Henderson's account of the stabbing. Henderson testified that the appellant reached over the victim's right shoulder and stabbed her on the left side. 23RR 98. The autopsy showed that there was no downward wound track, and the wound track went from the victim's left side to her right. 24RR 210, 229. The

appellant argues that if Henderson were correct, the wound track should have gone from right to left.

First, it makes perfect sense that the track was from left to right. If you are standing behind a person, and you reach over their right shoulder to stab them on their left side (as Henderson testified), the wound will probably start on their left side and proceed to their right side, as you draw the knife back towards yourself (as the wound track did in this case). Thus, the wound track actually corroborates Henderson's account of the stabbing.

Second, even if the wound track and Henderson's account did not jibe, there is nothing about the wound track that would rationally show that the appellant acted recklessly when she stabbed the victim. Thus, this evidence does not entitle the appellant to an instruction on manslaughter.

### *Dr. Dewan's testimony about a hypothetical surgery*

Dr. Dewan is a cardiothoracic surgeon who operated on the victim. 22RR 156-71. The appellant points to Dr. Dewan's testimony on cross-examination, where the defense counsel asked how Dr. Dewan would want to approach a hypothetical surgery where he had

to cut a 1.5 centimeter long hole in a patient's artery (i.e., the same wound that the victim had). The doctor replied that the most direct way would be to cut straight on, instead of coming at an angle from the right or left, and he agreed with defense counsel that he would want the patient to be still, that he would want to do the surgery with the light on, and that he would want the patient to have their clothes off. 22RR 184-90.

There is nothing about the testimony about a hypothetical surgery that would rationally show that the appellant acted recklessly in stabbing the victim. Thus, this evidence also does not entitle the appellant to an instruction on manslaughter.

### *The lack of medical expert opinion on mental state*

The appellant next points out that none of the medical experts testified that the stabbing was intentional, and he further points out that the pathologist (also referred to as the medical examiner) specifically testified that she could not conclude that the homicide was intentional.

The record shows that the medical examiner merely agreed with defense counsel that she could not tell "who did it," "why they did it,"

13

"if it was intentionally done," or "if it was done in self-defense" based on her work. 24RR 221. She clearly meant that it is not possible to answer these kinds of questions based solely on an autopsy. This is not affirmative evidence of anything, and it certainly is not affirmative evidence of recklessness. Thus, the appellant was not entitled to an instruction on manslaughter based on this testimony.

### *The evidence that the knife blade was small*

The appellant also argues that jurors could have concluded that the appellant did not have a specific intent to kill the victim because there was some evidence that the knife blade was as small as 2.5 inches.

First, the State did not have to prove that the appellant had a specific intent to kill because it alleged murder in three alternative ways, two of which do not require an intent to kill.

Second, it really does not matter how long the blade was. The evidence does not rationally support an inference that the appellant acted recklessly at the moment she stabbed the victim in the chest with a knife, regardless of the length of the blade.

### *Ryan Moore's testimony*

The appellant points to Moore's testimony that the appellant stabbed the victim as a "reflex" or "reaction" to the victim's assault on the appellant, and that the appellant appeared "shocked or confused" by what had happened. 27RR 181, 224.

In context, Moore did not mean that the stabbing was an involuntary reflex, like when a doctor taps your knee with a hammer.[1] Rather, Moore meant that the appellant stabbed the victim in response to the victim hitting the appellant first. This testimony arguably shows that the stabbing was an intentional act, a conscious response to the victim's initial aggression. But in any case, there is nothing about Moore's testimony that would rationally show that the appellant acted recklessly when she stabbed the victim.

When requesting the instruction on manslaughter at trial, the defense said that Moore testified that the appellant was "swinging like a windmill and wildly." 27RR 257. But the testimony from Moore was actually that the appellant swung "widely", not "wildly." 27RR 246,

---

[1] Even if he had, testimony on involuntary reflex supports an instruction on "voluntariness" pursuant to Tex. Pen. Code § 6.01, not recklessness or manslaughter. The jury was instructed on voluntariness. CR 286-87.

258. Moore further testified that it was "one swing." 2RR 246. The trial court explained, "But so far as I know, the way [Ryan Moore] demonstrated it, he says that she just swung once. It wasn't like she was swinging all over the place or anything like that. The motion he made was over the shoulder one time." 27RR 258. Thus, Moore's testimony does not support an inference that the appellant acted recklessly.[2]

In sum, there is no evidence that would rationally support a finding that the appellant acted recklessly when she stabbed the victim. Therefore, she was not entitled to an instruction on manslaughter.

### Standard of review for remaining points of error

A trial court's decision to admit or exclude evidence should not be reversed absent a clear abuse of discretion. The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

---

[2] Moore's testimony raises the issues of self-defense and sudden passion. The jury was instructed on both of these issues. CR 288-91, 300, 305.

Additionally, the trial court's ruling will be upheld if it is correct on any theory of law. This is true regardless of the reason the judge gives for his decision, and is especially true regarding the admission of evidence. *Romero v. State*, 800 S.W.2d 539, 543-544 (Tex. Crim. App. 1990). Therefore, the State will submit several alternative justifications for the court's rulings.

In the event that the appellate court finds that the trial court erred in admitting or excluding evidence, the next step is a harm analysis. The erroneous admission or exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (erroneous admission); *Potier v. State*, 68 S.W.3d 657, 663-66 (Tex. Crim. App. 2001) (erroneous exclusion). Non-constitutional error that does not affect a defendant's substantial rights must be disregarded. Tex. R. App. Proc. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Additionally, the conviction must be reversed if the reviewing court has grave doubt that the result of the trial was free from the

substantial effect of the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Grave doubt means that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error. *Id.* The conviction should not be reversed if the appellate court has fair assurance that the error did not influence the jury, or had but a slight effect, after examining the record as a whole. *Motilla*, 78 S.W.3d at 355.

***Reply Point Two:* The appellant cannot complain about the exclusion of the video because she did not try to admit the video. Additionally, the trial court did not abuse its discretion in refusing to allow the appellant to question Detective Nelson about the appellant's out-of-court statements because he lacked personal knowledge of the statements and because the statements were hearsay. And any error in excluding the statements was harmless.**

The appellant argues that the trial court erred during the guilt/innocence phase of trial by excluding Defense Exhibit 132, which she says is a video of her emotional outburst upon learning that the victim was going to die.

**The video**

The video was made in a police interview room, two days after the stabbing. On the video, Detective Nelson begins to read Miranda

warnings to the appellant, but he stops when she hands him her attorney's business card and asks him to call her lawyer. DX 132 at 12:34. Detective Nelson says that he is not going to call her lawyer but that she can do so. DX 132 at 12:34. He tells her that she is under arrest for aggravated assault, but the victim is going to die. DX 132 at 12:34. He tells her that he cannot talk to her now, but after she talks to her lawyer, he would like to know why she did it, and that the victim's mother deserves to hear the truth. DX 132 at 12:34-12:36. Detective Nelson leaves the room, and the appellant cries. DX 132 at 12:37. About twelve minutes later, the detective lets the appellant's mother into the room. DX 132 at 12:49. The detective does not go in the room. He shuts the door, leaving the appellant and her mother alone in the room. DX 132 at 12:49. Over the next half hour, the appellant is emotional. She cries and hugs her mother. She also makes several statements to her mother. The following is a synopsis of the appellant's statements, but the court should refer to the video itself for complete accuracy:

> I did not mean to. So many people were out there, I didn't know what to do. Please don't let them take me. It was so many people! It was so many people! Is there any way I can go home to nana and papa? I just want to talk to her

[the victim's mother]. I want to tell what happened. Her mom needs to know the truth. I did not, I did not, I did not mean to do this! Her family! Lord have mercy on my soul. I can't believe this. It wasn't my fault! It wasn't my fault. I need to talk to her mother. I'm ready to go see my daddy. [Her father is deceased.] I apologize for everything I ever said about you dad, I'm ready to go to you. Mommy, I don't have anything to live for. I tried my hardest and it didn't work. Where's Ed? [Her lawyer.] I tried to get into college, couldn't make it. This is where God wants me to be. I can't believe it. I didn't want it to happen. I'm ready to go. Why did it all have to happen? I'm ready to go. Nothing to live for. I have not accomplished anything. I want to go see my daddy. She did not deserve that. Now two lives. It's just so hard. I don't want to live, I can't live with myself. I need to talk to her mom. I apologize. I didn't mean for any of this to happen, there was just so many people coming towards me. I've never been in that position in my life. I love you too, please don't let me rot in here mom. Please don't let me rot. I've been praying so much! I'm not even gonna get to go to college or anything. I never imagined this a day in my life, I would have never imagined. I'm ready to go. I'm ready to go see my daddy. Yes I am. Listen, she does not deserve that, she did not deserve anything. I prayed and prayed and this is what happened. I've lost my relationship with God. I lost it. This is what happens for me to have to come talk to him again. I lost everything, the person I used to be, everything. I lost everybody I was close to, everything. No he won't. I don't even want to think about that. I lost everybody. Except you and DJ [her brother]. I don't want to think about my family, I don't want to think about anything.

See DX 132 at 12:49-13:09.

After a half hour, Detective Nelson opens the door, and the appellant's mother leaves the room. DX 132 at 13:10. The appellant is taken out of the room about five minutes later. DX 132 at 13:15.

**Failure to preserve error**

The appellant argues that the trial court erred in excluding the video during the guilt/innocence phase of trial. But the appellant never tried to admit the video into evidence during this phase of trial. Instead, the record shows that she only wanted to question Detective Nelson about *the statements* that the appellant made to her mother while Detective Nelson was out of the room:

> (outside the presence of the jury)
>
> DEFENSE: And then her mother comes in, correct?
>
> NELSON: Yes, sir.
>
> DEFENSE: You allow a civilian who's not under arrest to come in and see her daughter, correct?
>
> NELSON: Yes, sir.
>
> DEFENSE: And then when her mom comes in, is there immediate crying and wailing and sobbing?
>
> NELSON: Yes, sir.
>
> DEFENSE: And during that part does she talk about this event or the events outside?

NELSON: Yes, she did.

DEFENSE: She did. Okay. And clearly crying and talking about wanting to kill herself and that type of stuff, correct?

NELSON: I believe she said something like that.

DEFENSE: Wanting to go see her daddy, I think is what she said?

NELSON: Yes, sir.

DEFENSE: Judge, we would offer that as an excited utterance under Rule 803.

26RR 114-15.

The State and Defense then argued about 1) whether the statements qualified as excited utterances and 2) whether the detective could testify about the statements since they were not made to him. 26RR 116-19. The trial court sustained the objection, emphasizing the second point:

COURT: Well, let me ask this question. If I understand this witness's testimony is that there is no statement made *to him*; is that right?

STATE: Yes, sir.

DEFENSE: Yes, sir.

COURT: So, you know, I – just as to him, anyway, I mean, I don't see that we do have an excited utterance *as to him*.

22

DEFENSE: Okay. Then – so are you sustaining their objection to that?

COURT: I am.

26RR 119 (emphasis added).

Following this, the video was offered and admitted for appellate record purposes only. 26RR 120. In other words, the video was admitted as an offer of proof to show the character of the evidence at issue. *See* Tex. R. Evid. 103(b). The appellant never tried to admit the video into evidence itself.

The trial court then asked the detective some clarifying questions, which clearly established that the detective had left the room and that the statements were made to the appellant's mother. 26RR 121-24. The video also clearly shows that the statements were made to the appellant's mother while the detective was out of the room. The trial court then tells the defense that the problem is that "there's not any statement actually made to this witness." 26RR 124-27.

It is clear from the record that the defense only sought to ask Detective Nelson about statements that the appellant made to her mother while he was out of the room. The defense never tried to admit the video into evidence. Thus, the appellant has not preserved

23

error on a complaint that the trial court erred in failing to admit the video during guilt/innocence. *See* Tex. R. App. Proc. 33.1(a).

The appellant did try to admit the video as evidence during the punishment phase of trial, and the court excluded it. The State will address this ruling in Point Three. In the event that the appellate court determines that the appellant tried to admit the video at guilt/innocence, the State incorporates the arguments made in Point Three to support the trial court's ruling excluding the video.

## No abuse of discretion – lack of personal knowledge

The trial court did not abuse its discretion in refusing to allow the appellant to question Detective Nelson about the statements that the appellant made to her mother because Detective Nelson did not have personal knowledge of the statements.

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Tex. R. Evid. 602. Personal knowledge is not defined, but the Texas Court of Criminal Appeals has stated that personal knowledge will often come directly from the witness's senses (for example, what they have seen or smelled), or it may include an

opinion based on the witness's own experience. *Fairow v. State*, 943 S.W.2d. 895, 898 (Tex. Crim. App. 1997). The burden is on the proponent of the testimony to establish that the witness has personal knowledge of the events. *Id.*

The appellant's case is similar to *Hartin*. In that case, the trial court refused to let the defendant's mother testify that the defendant was not intoxicated because she based her opinion on her review of a police videotape. The court of appeals affirmed, explaining that the mother's opinion was not based on personal knowledge because she did not personally observe the interactions on the videotape. *Hartin v. State*, 2009 Tex. App. LEXIS 2765, *2-5 (Tex. App.—Beaumont 2009, pet. dism'd) (mem. op., not designated for publication).

Like *Hartin*, Detective Nelson did not personally observe or overhear the statements that were on the videotape. In fact, Detective Nelson was not even in the room when the statements were made. Thus, Detective Nelson did not have personal knowledge of the statements, and the trial court did not abuse its discretion in refusing to let the appellant question him about these statements.

**No abuse of discretion – hearsay**

It was also within the trial court's discretion to exclude Detective Nelson's testimony about the appellant's statements because the statements were hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is generally not admissible, except as provided by statute or rules. Tex. R. Evid. 802.

The appellant argues that the hearsay exception for excited utterances applies. An excited utterance is "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2).

As the Texas Court of Criminal Appeals has explained,

> The twenty-four hearsay exceptions listed in Texas Rule 803 may be roughly categorized into (1) unreflective statements, (2) reliable documents, and (3) reputation evidence. The rationale for all of the exceptions is that, over time, experience has shown that these types of statements are generally reliable and trustworthy. The first set of hearsay exceptions, unreflective statements, are "street corner" utterances made by ordinary people before any thoughts of litigation have crystallized. These unreflective statements used to be called "res gestae," an imprecise Latin legalese term, because the speaker was not thinking about the legal consequences of his

26

statements. In most instances, the speaker was not thinking at all; the statement was made without any reflection, thought process, or motive to fabricate or exaggerate.

*Fischer v. State*, 252 S.W.3d 375, 379 (Tex. Crim. App. 2008).

Stated another way, the excited utterance exception is based on the assumption that, at the time of the statement, the declarant is not capable of the kind of reflection that would enable him to fabricate information. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Therefore, the court must determine whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *Zuliani v. State*, 97 S.W. 3d 589, 596 (Tex. Crim. App. 2003). Factors the court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Apolinar*, 155 S.W.3d 187.

*The length of time between the occurrence and the statement.* The appellant argues that there was not a lot of time between when Detective Nelson told the appellant that the victim was going to die and when the appellant became emotional and made all of her

statements to her mother. But it is important to also consider that two days had elapsed between the stabbing and the statements, since the excited utterance exception is based on the assumption that the statements were made at a time when the declarant is not capable of the kind of reflection that would enable him to fabricate information. Over this two-day period, the appellant had plenty of time to reflect and to fabricate information. In fact, the appellant had already lied to the police, telling them that she had not been present when the victim was stabbed. 25RR 251.

Considering the two-day period since the stabbing and the fact that, during this time, the appellant had already lied about her involvement, this factor weighs against a finding that the appellant was not capable of the kind of reflection that would enable her to fabricate information. *Cf. Blue v. State*, No. 04-11-00726-CR, 2012 Tex. App. LEXIS 7895, *17-18 (Tex. App.—San Antonio 2012, pet. ref'd) (mem. op., not designated for publication) (finding no abuse of discretion in excluding the defendant's statements as excited utterances because 15-20 minutes was a sufficient length of time in

which the defendant could have formulated a story about why he stabbed the victim).

*The nature of the declarant.* The appellant was clearly emotional, so this factor weighs in favor of admission.

*Whether the statement is made in response to a question.* Most of the statements were not in response to direct questioning. But Detective Nelson had just finished telling the appellant that he would like to know why she did it and that the victim's mother deserves to hear the truth, and the appellant clearly had this in mind because she says multiple times that she wants to talk to the victim's mother and that the victim's mom needs to know the truth. The appellant's mother also asks her "What would you say?" and the appellant makes some further statements to answer this question. Thus, the statements were not wholly spontaneous.

*Whether the statement is self-serving.* The predominant nature of the appellant's statements are self-serving. She says, "I did not mean to do this," "It wasn't my fault," and "I didn't mean for any of this to happen, there was just so many people coming towards me."

Additionally, it is clear that the appellant's statements were not "street corner utterances" made before any thoughts of litigation had crystallized, without any reflection, thought process, or motive to fabricate or exaggerate. To the contrary, the appellant's statements were made in a police station interview room, after the police had conducted an investigation, questioned the appellant and her friends, and arrested the appellant for a felony offense. At the time she made the statements, the appellant was aware that she was being charged with a serious crime, and she clearly had a motive to fabricate or exaggerate. Also, she had an additional motive in that she clearly did not want her mother to think badly of her.

In sum, considering the two-day period that the appellant had to reflect on the stabbing, the self-serving nature of the statements, and her motive to fabricate or exaggerate, the trial court was well within its discretion to exclude them. *See Blue v. State*, No. 04-11-00726-CR, 2012 Tex. App. LEXIS 7895, *17-18 (Tex. App.—San Antonio 2012, pet. ref'd) (mem. op., not designated for publication) (upholding trial court's exclusion of defendant's self-serving statements); *Ingram v. State*, 2012 Tex. App. LEXIS 260, at *7-9 (Tex. App.—Dallas 2012,

pet. ref'd) (mem. op., not designated for publication) (same); *Dyke v. State*, No. 06-11-00129-CR, 2012 Tex. App. LEXIS 2181, at *8-12 (Tex. App.—Texarkana 2012, pet. ref'd) (mem. op., not designated for publication) (same).

Finally, the appellant argues that the trial court reversed itself and ruled that her statements were admissible as excited utterances during the punishment phase of trial. It is true that the court allowed her mother to testify about the initial statements that the appellant made upon finding out that the victim was going to die, as excited utterances. 29RR 199-200. But the court never ruled that all of the appellant's statements to her mother were admissible, or that the video was admissible, or that anyone other than her mother could testify about the statements. Thus, the court did not reverse itself.

**No harm**

The appellant argues that exclusion was harmful because her statements on the video that she "did not mean to do this" constitute strong, probative evidence of her mental state at the time of the stabbing. She argues that this evidence shows that she did not mean to kill the victim or cause serious bodily injury. She also argues that

31

this evidence would have given her a basis for requesting an instruction on manslaughter.

The appellant's self-serving statements, made two days after the stabbing and after her arrest, are not very probative of her mental state at the time of the stabbing. Moreover, her statements do not support a request for an instruction on manslaughter. *See Cavazos*, 382 S.W.3d at 385 (holding in similar circumstances that appellant's statement that he did not mean to shoot anyone, made a few days after the shooting, did not rationally support an instruction on manslaughter).

Additionally, all of the evidence at trial showed an intentional stabbing. The appellant pulled out a knife, raised it up in the air, brought it down in a single swing, stabbed the victim in the chest, and fled the scene. Considering the evidence at trial, which does not rationally show anything other than an intentional stabbing, any error in excluding the statements is harmless.

***Reply Point Three:*** **The trial court did not err in excluding the video during the punishment phase because the video contained hearsay, it was more prejudicial than probative, and admission was not required under the best evidence rule. And any error in excluding the video was harmless**

During punishment, the trial court said that the appellant's mother could testify about the initial statements that the appellant made when she found out that the victim was going to die, as excited utterances, but she could not testify about all of the appellant's statements. 29RR 199-200.

The appellant then tried to admit the video under the best evidence rule, but the trial court excluded it "on 403 grounds." 29RR 201. On appeal, the appellant argues that the trial court erred in excluding the video.

The appellant's mother then testified that when she saw the appellant at the police station, the appellant was crying and upset, that she no longer wanted to live, that she said she was scared, and it was so many people. 29RR 202-03.

The State repeatedly objected to any testimony about the stabbing itself, and the trial court told the appellant's mother that she was only

33

being asked about the appellant's emotional reaction to the news that the victim was going to die. 29RR 203-05.

The appellant's mother then testified that the appellant cried, that she did not want to be there, that she wanted to speak to the victim's mother, that she wanted to tell the victim's mother that she was sorry, that there was never any intent to harm the victim, and that everything happened so fast. 29RR 206.

**Failure to preserve error**

The appellant offered the video in its entirety. She never pointed out specific statements or portions of the video that she wanted admitted. The trial court is not obligated to sort through evidence in order to segregate the admissible from the excludable. Therefore, if any part of the video is inadmissible, the trial court could safely exclude it all. *See Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 1035 (1993), *overruled on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001) (no error in excluding 70-page transcript because appellant never specified which portions he wanted to introduce into evidence); *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (no

error in admitting audiotapes because the appellant never specified which portions were inadmissible).

With this in mind, the trial court did not abuse its discretion in excluding the video for several reasons:

**No abuse of discretion – hearsay**

As argued in Reply Point Two, the appellant's statements on the video are hearsay, and the trial court acted within the zone of reasonable disagreement in excluding these statements under the excited utterance exception.

**No abuse of discretion – Rule 403**

The trial court also excluded the video under Rule 403, which states that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403.

In a Rule 403 analysis, the trial court must balance (1) the inherent probative force of the evidence along with (2) the

proponent's need for that evidence against (3) unfair prejudice, which refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, such as with scientific evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The video has some probative value in showing the appellant's remorse. She cries, and she says that the victim "did not deserve that," and "I apologize."

But the appellant's need to admit the video was low because her mother testified about her crying and her statements. Also, she had other ways of getting her remorse before the jury. She could have questioned Detective Nelson about her demeanor, if she wanted to. And the appellant could have testified herself.

The appellant argues that testimony was not as impactful as the video would have been, but this just emphasizes the prejudicial nature of the video. Watching her wail and sob for 30 minutes would clearly have had an unfairly prejudicial emotional impact on the jury. To illustrate, the State never would have been allowed to play a 30 minute video of the victim's mother wailing and sobbing upon hearing that her daughter was going to die.

In sum, the trial court did not abuse its discretion in excluding the video under Rule 403 because the danger of unfair prejudice resulting from the extremely emotional video substantially outweighed the video's probative value, especially since the appellant had the ability to put evidence of her remorse before the jury through other sources. Indeed, her mother testified about her remorse. Given the emotional impact of the video, the trial court's decision was at least within the zone of reasonable disagreement.

**No abuse of discretion – best evidence rule**

The appellant also argues that the video should have come in under the best evidence rule.

The best evidence rule states that, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." Tex. R. Evid. 1002.

The best evidence rule has no application at all when a party calls a participant or observer of a conversation to testify to it because it is the contents of the *conversation*, not the contents of the *recording*, that is the issue. *See Matute v. State*, No. 03-13-00601-CR, 2014 Tex. App. LEXIS 12743, at *13-15 (Tex. App.—Austin Nov. 26, 2014, pet. filed March 3, 2015) (mem. op., not designated for publication).

Alternatively, since the appellant's mother participated in the conversation, her testimony describing the conversation is the best evidence of that conversation. *Id*. at *13.

Therefore, the trial court did not abuse its discretion in allowing the appellant's mother to testify about the conversation while excluding a video recording of that conversation.

**No harm**

The appellant argues that exclusion of the video was harmful because it showed her remorse. But her mother testified about the

events on the video, namely, that the appellant was crying and upset, that she no longer wanted to live, that she wanted to tell the victim's mother that she was sorry, that there was never any intent to harm the victim, and that everything happened so fast. 29RR 202-06.

The appellant argues that the jury might have doubted her remorse and that the video would have convinced them that her remorse was genuine. But on the video, it appears that the appellant is mostly concerned about herself; she never takes responsibility for stabbing the victim; she repeatedly says that it was not her fault; and she wants to talk to the victim's mother so that she can explain how the stabbing was not her fault.

In any event, considering all of the evidence, including her mother's testimony about her remorse, exclusion of the video did not have a substantial and injurious effect or influence on the jury's verdict.

***Reply Point Four:*** **The trial court did not abuse its discretion in admitting out-of-court statements under the excited utterance exception to the hearsay rule. And any error in admitting the statements was harmless**

At punishment, the State called several witnesses to testify about an incident in May of 2009, where the appellant swung a knife at her brother. The State called the appellant's mother (Patricia Ritcherson), the responding officer (Jared Jensen), and the appellant's brother (Donald "DJ" Ritcherson), in that order. While questioning Officer Jensen, the State asked him to recount what Patricia and Donald had said at the scene on the night of the incident, under the excited utterance exception to the hearsay rule. The defense objected, arguing that the statements were not excited utterances. The trial court overruled the objection. 29RR 63.[3]

## No abuse of discretion – excited utterances

The record supports the trial court's decision to admit Patricia and Donald's out-of-court statements under the excited utterance exception to the hearsay rule.

---

[3] The appellant also made a Confrontation Clause objection, but she does not raise this issue on appeal. There is no confrontation issue because both Patricia and Donald testified.

Patricia and Donald made the statements at 4 o'clock in the morning, while the police were at their front door and the appellant was cursing at everyone, immediately following a physical altercation with the appellant, which included pushing and shoving and the appellant swinging a knife at Donald. 17RR 7-10; 29RR 26, 44-46, 51, 54, 60-61. Furthermore, Officer Jensen testified that the scene was "very chaotic," that "a pretty major event had just happened," and that Patricia and Donald were "very excited," "upset," and appeared to be under the influence of a recent startling event. 17RR 9, 11; 29RR 61, 63.

On this record, the trial court did not abuse its discretion in admitting Patricia and Donald's statements as excited utterances. At the very least, the ruling was within the zone of reasonable disagreement.

**No harm**

The majority of Officer Jensen's testimony about Patricia and Donald's out-of-court statements was pretty much the same as the testimony that Patricia and Donald gave themselves at trial. Basically, the appellant wanted to leave the house, Patricia tried to stop her,

41

Patricia asked Donald to help, there was pushing and pulling, the appellant got a knife, Donald wrestled the knife away from her, the appellant claimed that Donald hit her, and Donald and Patricia denied this. Jensen's testimony on these points was merely cumulative and could not have had more than a slight effect on the jury. *See* Patricia's testimony, 29RR 42-59; Donald's testimony 29RR 80-95; Jensen's testimony, 29RR 59-75.

There is only one important difference: Officer Jensen testified that Donald told him that the appellant swung a knife at him and tried to stab him, and Patricia gave pretty much the same story. 29RR 63-66. But at trial, Donald and Patricia testified that they did not recall the appellant swinging a knife at Donald. 29RR 46, 87.

This is obviously a major difference, but it could not have had a substantial effect on the jury's verdict because *the appellant herself* admitted to Officer Jensen that she swung a knife at Donald, and Officer Jensen testified about her admission three separate times. 29RR 67, 72, 74.

In light of the appellant's own admission that she swung a knife at Donald, Officer Jensen's testimony about other out-of-court statements to this effect could not have had much effect on the jury.

## Prayer

The State asks this Court to overrule the appellant's points of error and affirm the trial court's judgment.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

## Certificate of Compliance and Service

I certify that this brief contains 8,188 words. I further certify that, on the 23rd day of March, 2015, a true and correct copy of this brief was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the defendant's attorney, Alexander L. Calhoun, Law Office of Alexander L. Calhoun, 4301 W. William Cannon Dr., Suite B-150, #260, Austin, Texas 78749.

**Angie Creasy**