

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00059-CR

_____

DONALD K. EMICH, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1486612D

Before Kerr, Pittman, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Donald K. Emich appeals from his jury conviction and thirty-year sentence for felony assault, enhanced from a misdemeanor by a prior family–violence assault, and further enhanced to a first-degree felony because of two prior, final felony convictions. *See* Tex. Penal Code Ann. §§ 12.42, 22.01(a)(1), (b)(2)(A). In three points, he contends that (1) the State failed to prove his prior family–violence assault conviction beyond a reasonable doubt, (2) the trial court abused its discretion by admitting evidence over his hearsay objections: a fingerprint card on file with the Tarrant County jail and a judgment and docket sheet from the prior family–violence assault conviction, and (3) the trial court abused its discretion by admitting extraneous offense testimony from the complainant over his rule 403 and 404(b) objections, *see* Tex. R. Evid. 403, 404(b). We affirm.

## I.     Facts Adduced at Trial

Emich and the complainant, both drug users, had a history of domestic violence during their approximately eighteen-month relationship. This prosecution arose from one of those incidents in Glenwood Park, Fort Worth, where the complainant was living in a tent among other homeless people. Emich had been staying with her for at least a couple of days.

Around 8:30 a.m. on February 6, 2017, Officer Joshua Steger responded to a 911 call about a disturbance at Glenwood Park. He and another officer first met with the 911 caller—a man also living in Glenwood Park—and then drove around to the

side of the park where they found Emich inside a tent. Emich was cussing and yelling, and Officer Steger presumed that Emich was directing his ire at the complainant, who was about twenty yards away by a creek embankment. She was crying. As the police were taking Emich out of the tent, he said he and the complainant had just had a verbal argument.

Officer Steger walked over to the complainant. She would not turn around and talk to him at first, but when she finally faced him, he noticed she had a black eye. The complainant told Officer Steger that Emich had given her the black eye the day before but that on February 6, he had hit her in the jaw, causing pain. The other officer took a picture of the complainant pointing to where she felt pain, and the trial court admitted the photograph into evidence. The complainant went into the tent and tried to pack a bag because she wanted to get away from Emich. She was fearful and scared. Emich, on the other hand, was not only agitated but was also cussing and yelling at the officers. The officers arrested Emich. Neither the officers nor the 911 caller witnessed Emich actually striking the complainant, and Officer Steger did not see any evidence of injury on the complainant other than scratches and her black eye.

The trial court admitted the MedStar ambulance report of the incident into evidence, and the prosecutor read this part of it to the jury:

> MedStar 30 dispatched to an assault, EMS stage for P.D. EMS arrived on scene to find PT standing with Fort Worth Fire and PD.
>
> PT stated that she didn't want to go to the hospital. PT had black, purple left eye, scratches over the left shoulder and backside. PT said

3

that her left shin was hurting. EMS looked and there was bruising. EMS took manual vitals. PT's vitals were stable.

EMS advised PT to go get checked out if she didn't want to go with EMS. EMS explained to PT the risks of not going and PT understood. PT signed AMA.[1]

Roy Babbich also responded that day with the Fort Worth fire department. He testified that the complainant "really didn't want any help from us." According to Babbich, "she looked like she had been beat up. But she was also . . . living I guess in the park or the woods, so she was also in pretty bad shape because of that too." He described the complainant that day as "[t]imid, beat down, worn out." Emich, though, was "[a]ggravated, angry, [and] seemed a little . . . crazy." He was cussing the fire department and police, and he was lurching at the police, who were restraining him.

Encarncion Perez testified that on February 6, 2017, he was living in Glenwood Park with other homeless people. He called 911 that day because he was scared Emich was going to kill the complainant. He passed by their tent a couple of times that morning and heard "noise"; the complainant was yelling, "Help me, help me." Perez heard "a woman saying that somebody [was] beating her." The complainant was screaming, and he was afraid Emich would kill her. The trial court admitted a recording of Perez's 911 call, in which he told the operator that a man is beating a woman, and he is tired of it.

---

[1]AMA is an acronym for against medical advice. AMA, *Black's Law Dictionary* (10th ed. 2014).

The complainant first testified about prior incidents of abuse by Emich. When questioned about how she got the black eye, she said that Emich "must have" hit her with his hand but that "a lot of these incidents" were multi-day events. When asked what happened February 6, she said, "He hit me with a log. What? I don't remember." But she remembered that the police were called early on February 6, around 8:00 or 8:30 a.m. When the police arrived, she was in the creek bed, praying for help. She could not remember what she told the officers. The complainant testified that she thought the assault had started a couple days earlier when she ran into Emich at a convenience store: "[t]hen a couple of days go by and you can't get away." She also said, "It's hard for me to keep it all straight. You're talking about a lot of concussions." The complainant confirmed that she did not want medical attention that day and was probably uncooperative because the police "had written me a ticket last time they came out for fighting when I called them."

On cross-examination, the complainant admitted that she had been corresponding with Emich while he was in jail and that at the time of trial she was also in jail for possession of methamphetamine, which she had continued to use after Emich's arrest. She also testified about her past drug use, drinking, and mental health problems. She agreed that her drug use and concussions had affected her memory.

## II.     Evidence of Prior Conviction is Sufficient

Emich argues in his first point that the State failed to meet its burden to prove beyond a reasonable doubt that he was previously convicted of family–violence assault.

The State can enhance a class A misdemeanor assault to a third-degree felony with proof beyond a reasonable doubt that the defendant was previously convicted of assaulting a family member, household member, or person with whom the defendant had a continuing romantic or intimate relationship. *Id.* § 22.01(a)(1), (b)(2)(A); *see* Tex. Fam. Code Ann. § 71.0021(b) (defining dating relationship), § 71.003 (defining family), § 71.005 (defining household); *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Sufficient proof must link the conviction to the defendant, but no specific document or mode of proof is required. *Flowers*, 220 S.W.3d at 921. A judgment that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted may be sufficient. *Id.* at 921–22. We apply the *Jackson* standard to determine whether the State offered sufficient proof of a prior conviction. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").

6

Here, the trial court admitted a certified copy of a 2016 Tarrant County judgment showing that Donald K. Emich was convicted of "ASSAULT BODILY INJURY-FM." The judgment includes a finding that "the Defendant committed an offense involving Family Violence." Although the judgment copy contains a fingerprint, parts of the fingerprint image are missing. Also included with the judgment is a docket sheet with the defendant's signature.

Tarrant County Sheriff's Deputy James Blaszak testified that he took Emich's fingerprints on the day of the trial; the trial court admitted that fingerprint card, State's Exhibit 12, for record purposes only. Deputy Blaszak also identified a certified copy of a fingerprint card for Donald K. Emich that the sheriff's office keeps "in the booking area in the ID section." According to Deputy Blaszak, the sheriff's office takes a set of fingerprints "whenever somebody comes into the jail for the first time." Any time that person is booked in thereafter, the sheriff's office compares that person's prints to the fingerprint card on file. The trial court admitted the jail-file fingerprint card into evidence as State's Exhibit 7, and Deputy Blaszak testified that the fingerprints on the jail-file card matched the fingerprints that he had taken from Emich the morning before trial. Exhibit 7 contains Emich's name, birthdate, signature, race, gender, and CID (county identification) number. Deputy Blaszak explained that the jail assigns a CID number the first time a person is jailed; not only is that number unique to a single person, a person can have only one CID number.

The CID number and birthdate on the 2016 judgment match those listed on Exhibit 7. Additionally, the jury could compare the signature on the docket sheet accompanying the judgment with the fingerprint-card signature; they are strikingly similar. Finally, Deputy Blaszak was able to link Emich to Exhibit 7 because the fingerprints in that exhibit matched the fingerprints Deputy Blaszak took from Emich the morning of trial. Thus, we conclude that the State sufficiently proved that a prior family–violence assault conviction existed and that it was linked to Emich. *See Flowers*, 220 S.W.3d at 921; *Goode v. State*, No. 02-10-00465-CR, 2011 WL 4502333, at \*2 (Tex. App.—Fort Worth Sept. 29, 2011, pet. ref'd) (mem. op., not designated for publication) (holding proof of prior conviction sufficient when linked to defendant by CID number, full name, and birth date); *see also Ramirez v. State*, No. 02-13-00540-CR, 2015 WL 4652771, at \*7–8 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that comparison of defendant's fingerprints to fingerprint on prior judgment was required for sufficient proof to ensure that no other inmates had been "abusing the system by using" defendant's name as an alias).

We overrule Emich's first point.

## III.   Fingerprint Card and Prior Judgment are Admissible Public Records

In his second point, Emich contends the trial court abused its discretion by admitting Exhibit 11, the 2016 judgment and accompanying docket sheet, and Exhibit 7, the jail-file fingerprint card, because they both contain inadmissible hearsay.

8

He argues specifically that the fingerprint card is not admissible as a public record because it contains information observed and reported by a law enforcement officer for use in this particular prosecution.[2] *See* Tex. R. Evid. 803(8).

## A. Exhibit 11

Emich objected to the admission of Exhibit 11 because "it contains other information that's hearsay and not related to the conviction," and the trial court overruled the objection. The State contends the objection did not preserve his appellate complaint because it did not specifically identify the "other information," but Emich's objection could only refer to the information contained on the docket sheet, which was the only other part of the three-page exhibit. Accordingly, we conclude Emich preserved his appellate complaint that the docket sheet contained inadmissible hearsay. *See* Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) (admonishing courts of appeals against engaging in a hyper-technical parsing of an objection's specificity); *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) (explaining that preservation does not require "magic language" and turns only on whether the trial court understood the basis of the objection).

The docket sheet accompanying the 2016 judgment is admissible as a public record; it is a document maintained by the trial court clerk setting out the trial court's

---

[2]He also contends that the State did not lay the proper predicate for the exhibit to be admitted as a business record, but we will not address that argument because of our disposition of his public-record argument. *See* Tex. R. App. P. 47.1.

9

activities. *See* Tex. R. Evid. 803(8)(A)(i); *Brown v. State*, No. 12-11-00027-CR, 2011 WL 3915663, at *3 (Tex. App.—Tyler Sept. 7, 2011, no pet.) (mem. op., not designated for publication); *Vanderhorst v. State*, 821 S.W.2d 180, 183 (Tex. App.—Eastland 1991, pet. ref'd); *cf.* Tex. R. Civ. P. 26 ("Each clerk shall also keep a court docket in a permanent record that shall include the number of the case and the names of parties, the names of the attorneys, the nature of the action, the pleas, the motions, and the ruling of the court as made."). Emich did not argue at trial, nor does he argue on appeal, that "the source of information or other circumstances indicate a lack of trustworthiness." Tex. R. Evid. 803(8)(B). Thus, the trial court did not abuse its discretion by admitting Exhibit 11.

### B. Exhibit 7

Emich claims that the State's Exhibit 7 fingerprint card is not admissible as a public record because it contains information observed by law-enforcement personnel in a criminal case, to which the public-records hearsay exception does not apply. *See* Tex. R. Evid. 803(8)(A)(ii).

Although rule 803(8)(A)(ii) allows the admission of law-enforcement reports (1) that are prepared in a nonadversarial setting, (2) that are unrelated to any specific litigation, and (3) that record objective, neutral observations, the rule excludes law enforcement's "crime-scene or investigation observations" from admission as public records "because [such] observations, opinions, and narrations are made while the officer is 'engaged in the often competitive enterprise of ferreting out crime,'" and

10

are inherently adversarial and less reliable than other types of public records. *Fischer v. State*, 252 S.W.3d 375, 382–83 (Tex. Crim. App. 2008) (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948)). But this exclusion does not apply to officers' objective observations while conducting "routine business matters," such as noting when property is taken out of and checked into an inventory room or making a fingerprint card. *Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996); *McLeod v. State*, 56 S.W.3d 704, 710 (Tex. App.—Houston [14th Dist.] 2001, no pet); *see also United States v. Quezada*, 754 F.2d 1190, 1193–94 (5th Cir. 1985) (refusing to apply federal rule 803(8) to exclude "all reports made by a government employee . . . offered against a criminal defendant" and distinguishing routine, objective reports "made as part of the everyday function of the preparing official or agency" from crime investigation reports); *Fischer*, 252 S.W.3d at 382 n.29 (citing *McLeod*); *Perry v. State*, 957 S.W.2d 894, 898–99 (Tex. App.—Texarkana 1997, pet. ref'd) (holding that law-enforcement exclusion did not apply to child support arrearage report); *cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539–40 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

Despite Emich's arguments to the contrary, Deputy Blaszak testified that recording first-time jail inmates' fingerprints, and subsequently comparing them

11

anytime a person is re-arrested, are routine duties of jail officers in the Tarrant County jail's booking area and that the sheriff's department maintains these records. Accordingly, we conclude that the information in Exhibit 7 is not of the inherently adversarial and potentially unreliable nature that would require its exclusion under rule 803(8)(A)(ii) and that the trial judge did not abuse his discretion by admitting it.

We overrule Emich's second point.

## IV. Complainant's Testimony About Extraneous Assaults Admissible

Emich's third point concerns the admissibility of the complainant's testimony about extraneous assaults Emich committed against her. Emich argues that the extraneous offense evidence was not relevant for any purpose other than character conformity and was substantially more prejudicial than probative. *See* Tex. R. Evid. 403, 404(b).

### A. Emich Did Not Forfeit This Issue Through Inadequate Briefing

The State contends that Emich did not adequately brief this complaint because he did not devote specific argument to each separate assault and cites over one hundred pages in support of his argument. But Emich expressly complains only of the complainant's extraneous offense testimony and cites only twenty-nine pages in the record to support his contention that this testimony served no purpose other than character conformity; he cites other pages to argue that the trial court's alleged error was harmful. In the twenty-nine pages in which Emich identifies alleged error, the complainant testified that within a six-month period Emich (1) hit her in the face with

12

his fist, (2) hit her in the face with a belt, causing a scar, (3) kicked her in the head, and (4) slammed her head into a concrete floor. The trial court admitted photographs of the complainant's injuries from these assaults, but Emich does not complain about the admissibility of the photographs on appeal. The complainant also testified about the 2016 assault culminating in Emich's prior family–violence assault conviction as well as another 2016 assault. She further testified that the Watauga police came to her house at least ten times and that Emich had choked her with his hands.

Emich repeatedly objected to admission of the photographs of the complainant's injuries, as well as the extraneous offense testimony, on rule 404(b) and rule 403 grounds, and the trial court granted him a running objection. The trial court also considered Emich's complaints in the context of a pretrial motion in limine, but instead of granting or denying the motion in limine, the trial court ruled the evidence admissible under code of criminal procedure article 38.371. Because we can discern from the record references and argument in Emich's brief what testimony he is complaining about and why, and because his complaint corresponds to his trial objections and the trial court's admissibility rulings, we will review Emich's issue as adequately briefed. *See* Tex. R. App. P. 38.9.

**B. Testimony Relevant for Non-Character Conformity Purpose**

In assault–family–violence prosecutions, code of criminal procedure article 38.371 permits the admission of evidence about "the nature of the relationship between the actor and the alleged victim." Tex. Code Crim. Proc. Ann. art. 38.371(a),

13

(b). But the evidence must still be otherwise admissible under the rules of evidence, including rule 404(b). *Id.* art. 38.371(c); *Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Rule 404(b) prohibits the admission of extraneous offense evidence solely to prove character conformity. Tex. R. Evid. 404(b)(1). But this type of evidence may be admissible to prove other things, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Accordingly, in a family–violence assault prosecution, evidence of prior extraneous assaults on the same victim may be permissible under rule 404(b) to rebut a defensive theory that the alleged victim fabricated the allegations or to explain the victim's unwillingness to cooperate with law enforcement or the prosecution. *Morales v. State*, No. 14-17-00381-CR, 2018 WL 3118587, at *4 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. ref'd) (mem. op., not designated for publication); *Gonzalez*, 541 S.W.3d at 312. But simply because a defensive theory is advanced does not automatically mean extraneous offense evidence is admissible to rebut it; a defendant's mere denial that he committed the charged offense does not open the door to the admission of extraneous conduct because "a defendant generally denies commission of the offense at trial–that is the reason for having a trial." *De La Paz v. State,* 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Thus, for extraneous offense evidence to be admissible to rebut a fabrication defense, the extraneous offense must be similar to the charged offense and must logically serve to make more or less

14

probable "an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Id.*; *Sandoval v. State*, 409 S.W.3d 259, 301 (Tex. App.—Austin 2013, no pet.).

Not only did the complainant testify about the prior assaults, she also testified about law enforcement's response to them; specifically, she testified that the Watauga police had told her that charges against Emich were not warranted for the extraneous assaults and that she was an unreliable witness. She said that law enforcement's unwillingness to prosecute Emich made her feel like she deserved what he had done to her and that she had "eventually . . . stopped calling."

Our review of Emich's voir dire, opening statement, and cross-examination of the witnesses shows that, like the defendants in *Morales* and *Gonzalez*, he raised the defensive theory of fabrication. He also attacked the complainant's credibility and memory and suggested that she was the aggressor in any altercation because of her drug use and mental health problems. He further raised the possibility that she refused to seek medical treatment on February 6 because she was afraid her drug use would be discovered. He argued all of these defensive theories in his closing. The complainant's testimony about the prior assaults and nature of her relationship with Emich helped to rebut the defensive evidence undermining a conclusion that Emich assaulted her on February 6 as opposed to on other days—her inability to remember the exact events, her lack of significant recent injuries, and the lack of eyewitnesses to what actually occurred inside the tent. Accordingly, we hold that the complainant's

testimony about the history of abuse was admissible under rule 404(b) to rebut that defensive evidence. *See Lacer v. State*, No. 01-17-00267-CR, 2018 WL 4135025, at *12–13 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op., not designated for publication); *Morales*, 2018 WL 3118587, at *4; *Hammond v. State*, No. 10-17-00178-CR, 2018 WL 1866053, at *1–2 (Tex. App.—Waco Apr. 18, 2018, no pet.) (mem. op., not designated for publication).

### C. Testimony Not Substantially More Prejudicial Than Probative

Even if evidence is admissible under rule 404(b), it may nevertheless be inadmissible under rule 403 if its probative value is substantially outweighed by a danger of unfairly prejudicing the defendant, confusing the issue, misleading the jury, causing undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. When considering if evidence is admissible despite a rule 403 objection, the trial court must conduct a balancing test. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). In conducting a rule 403 balancing test, a court must consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

16

admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996).

The State had a need for the extraneous evidence; nobody saw what actually happened between the complainant and Emich on February 6, 2017, and the complainant could not remember the details of how or with what Emich hit her. That she was able to testify to a pattern of abuse by Emich helped explain why she could not remember exactly how he had injured her on that particular day. And while it is true that extraneous offense evidence carries an inherent danger that a jury will convict for character conformity, the State urged the jury to convict solely based on events on the day of February 6, 2017: "But make no mistake, I'm not asking you to convict him on February 6th because of all the rest. I'm asking you to convict him on his assault on her that day because he did it on that day." Although the State presented testimony from police officers about two 2016 assaults of the complainant by Emich—including the one the State proved as a prior family–violence conviction— the complainant's testimony did not take up an inordinate time or needlessly repeat evidence. There was also a low risk that the jury would be confused; the complainant's testimony gave a better picture of the cycle of violence between her and Emich that helped explain her actions on February 6 and her lack of memory regarding the exact

details of that particular assault. For these reasons, we conclude that the trial court did not abuse its discretion by admitting the complainant's extraneous offense testimony over Emich's rule 403 objection.

Because the evidence was admissible under rule 404(b) and 403, the trial court did not abuse its discretion by admitting it. We overrule Emich's third point.

## V.     Conclusion

Because we have overruled all of Emich's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 24, 2019