Opinion filed July 7, 2023



In The

# Eleventh Court of Appeals

_____

## Nos. 11-21-00272-CR & 11-21-00273-CR

_____

## FERNANDO NARVAEZ A/K/A FERNANDO AGUIRRE NARVAEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause Nos. CR27775 & CR27788**

### M E M O R A N D U M   O P I N I O N

In separate cause numbers, Appellant, Fernando Narvaez a/k/a Fernando Aguirre Narvaez, was indicted for the felony offenses of unlawful possession of a

firearm by a felon and evading arrest with a vehicle.[1]  *See* TEX. PENAL CODE ANN. §§ 38.04(a), (b)(2)(A), 46.04(a)(1) (West 2016 & Supp. 2022).  The State alleged one prior felony conviction in the indictment for unlawful possession of a firearm and two prior felony convictions in the indictment for evading arrest.  Upon the State's motion, the trial court joined the indictments for trial.  *See* PENAL CODE § 3.02(a) (West 2021).  The jury found Appellant guilty of both offenses.  The trial court found the enhancement allegations to be true and assessed Appellant's punishment at twenty years' incarceration and twenty-five years' incarceration, respectively, to be served concurrently in the Institutional Division of the Texas Department of Criminal Justice.

Appellant asserts two issues on appeal.  First, Appellant states that the trial court erred in admitting a 9-1-1 call when the caller was available to testify but did not.  Second, Appellant argues that the trial court erred in refusing to provide a limiting instruction or an instruction for the jury to disregard a witnesses' comment on Appellant's criminal history and parole.  We affirm the judgments of the trial court.

*Factual and Procedural History*

After a family outing, an argument began when Elaina Aguirre told Appellant, her boyfriend, to leave her apartment so that she could rest.  Elaina, her daughter Gabby Aguirre, Gabby's child, Gabby's friend, and Appellant all had returned to Elaina's apartment after lunch.  Elaina and Appellant had been "cruising" and drinking.  Elaina had a forty-eight hour shift the next day, so she asked Appellant to leave, but Appellant did not want to leave.  The argument then became physical

---

[1]A third indictment, not before us on appeal, charged Appellant with aggravated assault.  He was convicted of the lesser included offense of deadly conduct and was sentenced by the trial court to one year in the county jail.

between Elaina and Appellant and continued outside of the apartment. Appellant was then locked out of the apartment and threatened those inside by saying that he's "going to shoot the door open."

During the altercation, Gabby called 9-1-1. The 9-1-1 recording began with Gabby telling dispatch that Appellant was threatening to shoot the door open.[2] Gabby provided her name and address, and told dispatch that Appellant was drunk, high, and on parole. Gabby shared information with the 9-1-1 operator about Appellant's actions and criminal history. She stated that Appellant had fired a shot into her mother's car door the previous day. Other parts of the 9-1-1 call included Gabby relaying to dispatch that Appellant was "counting to three" and "saying that he's going to shoot the door right now." Gabby repeatedly told her mother to not open the door.

Police quickly arrived at the scene and talked to Appellant, who was, at that time, sitting in his car. Appellant screamed at the officers. He told the officers to shoot him, or else he would shoot himself. After a thirty-minute standoff with police, Appellant "backed his vehicle up and drove away." Officers activated their emergency lights and began a pursuit. During the pursuit, Appellant "didn't exceed any speed limits or run any stop signs or anything. He just kept continuing to drive"; Appellant evaded police for about ten minutes. But because Appellant was no longer

---

[2]Appellant describes the evidence in dispute as the "recording of the 911 call." The thirty-six-minute call was not admitted in its entirety; rather, two portions were admitted. The first portion is the first eight minutes of the call, and the second portion is a minute and a half from later in the call. Appellant objected to both portions at trial and does not differentiate between the two portions in his brief. However, Appellant's argument is that the call established Appellant's possession of a firearm. The second portion merely identifies Appellant's name and physical characteristics; this is information already given in the first portion. Therefore, when we refer to the "9-1-1 call," we refer to the first admitted portion of the 9-1-1 call.

creating a danger to himself or others, police made the decision that it was safe to terminate the pursuit.

*Standard of Review*

"Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Smith v. State*, 631 S.W.3d 484, 494 (Tex. App.—Eastland 2021, no pet.) (quoting *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019)). A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or the court acts arbitrarily and unreasonably. *Rhomer*, 569 S.W.3d at 669. When we review the same evidence under a Confrontation Clause objection, we review the trial court's constitutional legal ruling de novo. *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

*Analysis*

A. *Admission of the 9-1-1 call recording did not violate the Confrontation Clause*

"To implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial and (2) be testimonial in nature." *See Nicholls v. State*, 630 S.W.3d 443, 448 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Woodall*, 336 S.W.3d at 642). "Post-*Crawford*, the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or nontestimonial in nature." *Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd); *Wells v. State*, 241 S.W.3d 172, 175 (Tex. App.—Eastland 2007, pet. ref'd). Statements are testimonial if they are made under circumstances that would lead an objective witness to reasonably believe that the statements would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (citing *Wall v. State*, 184 S.W.3d 730, 735–36

(Tex. Crim. App. 2006)); *Walter v. State*, 581 S.W.3d 957, 981 (Tex. App.—Eastland 2019, pet. ref'd).

### 1. *The U.S. Supreme Court has addressed the issue*

In *Davis v. Washington*, the Supreme Court analyzed communications made in the course of police interrogations when there is no ongoing emergency (testimonial statements), and communications made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency (non-testimonial statements).[3] 547 U.S. 813, 822–23 (2006). Specifically, the Supreme Court in *Davis* considered the following factors in determining whether a statement was testimonial: whether the caller was describing present events, whether a reasonable listener would recognize the caller was facing an emergency, whether the elicited statements were necessary to resolve the present emergency, and whether the caller made the statements in a tranquil or safe environment. *Duchesneau v. State*, No. 02-18-00321-CR, 2019 WL 2455619, at *2 (Tex. App.—Fort Worth June 13, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Davis*, 547 U.S. at 826–27).

*Davis* found a 9-1-1 call to be nontestimonial. *Davis*, 547 U.S. at 813–14. In *Davis*, the 9-1-1 caller was describing "events *as they were actually happening*, rather than 'describ[ing] past events.'" *Davis*, 547 U.S. at 827 (quoting *Lilly v. Virginia*, 527 U.S. 116, 137 (1999) (plurality opinion) (alteration in original)). The 9-1-1 caller in *Davis* was plainly asking for help against a bona fide physical threat. *Davis*, 547 U.S. at 827. The 9-1-1 operator's questions were necessary to resolve the emergency, rather than find out what happened in the past. *Davis*, 547 U.S. at

---

[3]The 9-1-1 call in *Davis* (and our present case) was not made directly to police, but instead to a 9-1-1 operator. As in *Davis*, we consider the acts of the 9-1-1 operator to be the acts of police. *Davis*, 547 U.S. at 823 n.2.

827. Finally, the 9-1-1 caller provided answers over the phone "in an environment that was not tranquil, or even (as far as any reasonable 9-1-1 operator could make out) safe." *Davis*, 547 U.S. at 827.

The facts here are almost identical to those in *Davis*. Gabby's 9-1-1 call focused on her present situation. Gabby mentions that Appellant is outside the house with a gun. She relays that he is "counting to three" before shooting the door down. These circumstances represented a bona fide physical threat to Gabby and her family. The 9-1-1 operator asked Gabby her name, Appellant's name and physical description, and what kind of gun Appellant had—all questions aimed to resolve the present emergency. Like the phone call in *Davis*, Gabby's 9-1-1 call was not made in a tranquil or safe environment. The most notable difference between the statements here and in *Davis* is that Gabby incidentally offered information beyond Appellant's present behavior. But these statements about Appellant's criminal record and previous actions warned police that they were approaching a potentially volatile person in a dangerous situation. It is also relevant that these comments were not elicited by the 9-1-1 operator. If they had been elicited, it might support an argument that Gabby's statements were more the result of "structured police questioning" as had occurred in *Crawford*. *See Davis*, 547 U.S. at 829 (quoting *Crawford v. Washington*, 541 U.S. 36, 53 n.4 (2004)). But the 9-1-1 operator only asked questions relevant to the present emergency. Gabby's comments, whether responses to police questioning or not, were primarily made to assist the police in the ongoing emergency. As in *Davis*, "She simply was not acting as a *witness*; she was not *testifying*." *Davis*, 547 U.S. at 828.

An interrogation can evolve into testimonial statements once exigent circumstances have been addressed. *Davis*, 547 U.S. at 828. That is not the case

6

with regard to Gabby's recorded 9-1-1 call.  *Id.* at 828–29 (discussing in dicta that "[i]t could readily be maintained" that victim's responses to the operator's questions after the appellant drove away were testimonial).  The entirety of the audio occurred while Appellant waited outside the apartment, gun in-hand.  There was never a time when the dialogue evolved into a formal interrogation or similar "testimonial" exchange.  Because the 9-1-1 call here is nontestimonial, it did not invoke the Confrontation Clause.  *See id.*

### 2.  *Exception to Hearsay - Excited Utterance*

Appellant also argues that the 9-1-1 call does not fall within any exception to the hearsay rule.  At trial, the State characterized the 9-1-1 call as both an excited utterance and a present sense impression.  *See* TEX. R. EVID. 803(1), (2).  The trial court overruled the hearsay objection, but it did not specify whether the 9-1-1 call was an exception under Rule 803(1), 803(2), or both.  Evidentiary rulings are reviewed under an abuse of discretion standard, and we must uphold the trial court's decision if any ground ruled upon was meritorious.  *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

"The hearsay doctrine, codified in Rules 801 and 802 of the Texas Rules of Evidence, is designed to exclude out-of-court statements offered for the truth of the matter asserted that pose any of the four 'hearsay dangers' of faulty perception, faulty memory, accidental miscommunication, or insincerity."  *Fischer v. State*, 252 S.W.3d 375, 378 (Tex. Crim. App. 2008); *see* TEX. R. EVID. 801, 802.  Exceptions to the hearsay rule are permissible because they address unreliable aspects of these out-of-court statements.  *Fischer*, 252 S.W.3d at 378.  In *Fischer*, the Court of Criminal Appeals discussed the history and rationale of Rule 803(1) and (2), which they characterized as "unreflective statements."  *Id.* at 378–79.  These statements

eliminate the danger of insincere or unreliable statements because they are made contemporaneously with the event, and are "instinctive, rather than deliberative." *Id.* at 381 (quoting *Commonwealth v. Coleman*, 326 A.2d 387, 389 (Pa. 1974)).

An excited utterance requires that a person, while under the stress of excitement from a startling event or condition, makes a statement relating to that event or condition. TEX. R. EVID. 802(2). The basis for an excited utterance is that a person under the stress of a turbulent event loses the capacity for reflection that would otherwise cast doubt on the sincerity of the statement. *Grantham v. State*, No. 06-21-00150-CR, 2022 WL 4232914, at *11 (Tex. App.—Texarkana Sept. 14, 2022, no pet.) (mem. op., not designated for publication). To determine whether a statement is an excited utterance, the court will look to, among other things: the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). The "critical determination" is whether the declarant was still dominated by the emotions created by the event. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994)).

Each consideration weighs in favor of admitting Gabby's 9-1-1 call. Gabby's statements, whether responding to dispatch or talking to her family, occur during the event and are about the event. As to the "critical determination," it was not unreasonable for the trial court to find that Gabby was dominated by the emotions Appellant created when he threatened to shoot his way inside the apartment—where she hid with her child and mother. The phone call demonstrates these emotions.

During the initial few seconds of the call, Gabby talks over the 9-1-1 operator twice before finally saying, "Can I have someone come to [the address]?  My mom's boyfriend has a gun and he said he's going to shoot the door open.  He's on parole."  Gabby responds to questions from dispatch but also makes numerous unprompted comments, including "I got anxiety" and "this is too much for me."  Gabby's voice at times seems calm and level; she even has an exchange with her child that sounds more lighthearted than fearful, so as not to alarm a child in an alarming situation.  The trial court's determination to overrule the hearsay objection was not unreasonable or arbitrary.  As such, the 9-1-1 call was admissible under the excited utterance exception to the hearsay rule.

Because we conclude that the trial court did not abuse its discretion in admitting the phone call as an excited utterance, we do not need to address whether Appellant's argument that the trial court abused its discretion in admitting the 9-1-1 call as a present sense impression.  *See Ross*, 32 S.W.3d at 855–56; *see also* TEX. R. APP. P. 47.1.  We overrule Appellant's first issue.

B. *Appellant's objection and request for instruction was not timely*

In Appellant's second issue, he contends that the trial court erred when it refused to give an instruction to disregard testimony after Elaina, a witness, made comments about Appellant's criminal history and mental health.  The following exchange occurred during cross examination by Appellant's counsel:

> Q: What kind of help did you think he needed?
>
> A: Well, because -- I mean, like -- he's like -- he's been incarcerated practically his whole life. I mean, he needed help, you know --
>
> Q: But what kind of help --
>
> A: -- he needed counseling and stuff like that.

Q: -- did you think he needed?

A: I lived with him so -- abandonment issues. Obviously, if he couldn't go home that day, you know . . .

Cross examination continued without objection, and then counsel passed the witness to the State. After the State's redirect examination concluded, the witness stepped down and was excused. It was then that Appellant's counsel made an objection and a request outside the presence of the jury.

[DEFENSE COUNSEL]: I asked her what problems she was trying to help Fernando with, and she blurted out that he had been locked up for most of his life in front of the jury, and I would, first of all, ask the Court to instruct the jury to disregard that statement.

The trial court denied Appellant's request to provide an instruction at that time. However, the trial court did include a general instruction in the jury charge regarding extraneous offenses. Appellant concludes this did not remedy the harm of the witness's specific statements, but Appellant does not state the reasons why he claims that the general charge, in this situation, would be inadequate.

"Limiting instructions are governed by Rule 105 of the Texas Rules of Evidence, which provides that, '[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly.'" *Smith*, 631 S.W.3d at 500 (quoting TEX. R. EVID. 105(a)). A trial court errs if it does not give a limiting instruction upon proper request of a party. *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996). A proper request is one that is lodged as soon as the ground of objection becomes apparent. It must be timely made. *See Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001); *Moore v. State*, 999 S.W.2d 385, 403 (Tex. Crim. App. 1999);

*Beckley v. State*, 827 S.W.2d 74, 77 (Tex. App.—Fort Worth 1992, no pet.). Waiting until the witness has stepped down is too late to request a limiting instruction. *Moore*, 999 S.W.2d at 403. Even continuing a brief line of questioning before objecting can waive complaint on appeal. *Beckley*, 827 S.W.2d at 77 (trial court did not err in refusing to strike testimony when Appellant's counsel continued in his questioning for three more exchanges).

As in *Moore*, Appellant did not request a limiting instruction until after the witness stepped down. By failing to object to the witness's testimony and failing to timely request an instruction to disregard the statements, Appellant waived any complaint as to a limiting instruction for these statements. *See Hammock*, 46 S.W.3d at 895; *Moore*, 999 S.W.3d at 403. Therefore, the trial court did not err in refusing to instruct the jury to disregard the witness's statements. We overrule Appellant's second issue.

### *This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS
JUSTICE

July 7, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.